# REPORTS

OF

## CASES ARGUED AND DETERMINED

AT

## JANUARY TERM, 1839.

HANRICK *vs.* ANDREWS.

9p 9
97 433

9p 9
124 669

9p 9
127 545

1. A defence of usury, as it avoids a contract, is allowable under the plea of *non-assumpsit.*

2. But a special plea, disclosing particularly the facts proposed to be proved in a defence of usury, is allowable—special demurrers not being tolerated in this State.

3. A judgment sustaining a demurrer to a special plea, which contains matter that would be good under the general issue, does not, of itself, authorise the rejection of the same matter, as evidence to support the general issue.

4. The intercourse of mankind requires, that the acts of parties, valid where done, should be recognized in other countries, provided they be not contrary to good morals, and the policy of the State.

5. It is the comity of nations, and not the comity of courts, that authorises the administration of foreign laws within the limits of a State : and where they are not repugnant to local policy, or prejudicial to local interests,—the courts can exercise no discretion on the subject.

6. Personal contracts are to have the same validity, interpretation and effect, in every other country, which they have in the

9 P                    2

Hanrick *vs.* Andrews.

country where they are made, or are to be performed: and parties are presumed to be conversant of the laws of the country, in reference to which they contract.

7. Contracts are to be construed or interpreted according to the laws of the place where they are made—unless they are entered into with a view to the laws of some other State.

8. Where parties enter into a contract, without any stipulation for interest, but upon which, on default of payment, interest accrues—its rate must be admeasured by the scale prescribed by the laws of the country where the contract was made: unless the parties contracted in reference to another jurisdiction —in which case, the law of the place of payment will govern.

9. Where a bill is drawn in New York, payable in Alabama, which does not contemplate the payment of interest on its face—and interest is only to accrue in default of payment at maturity—the interest will be regulated by the law of Alabama.

10. But where a *loan* is made in *New York*, and the interest is *there* paid on it; and a bill is *there* drawn, payable in Alabama, for the amount of the loan, with usury—the law of the *former* State furnishes the criterion by which it is to be determined whether the contract is usurious.

11. It is not conclusive, to shew that the parties to a bill of exchange, contracted in reference to the interest prescribed by the law of Alabama,—that the bill expresses on its face, the place of payment to be in Alabama:—Extrinsic proof is admissible, to explain the intention of the parties.

12. It is incumbent on an endorser of negotiable paper, if he would prevent *usury* from being set up against him, to shew, that he became the *innocent holder of the paper, for a valuable consideration, before its maturity.*

13. The act of Congress, of May, seventeen hundred and ninety, does not exclude other modes of authenticating the acts of the Legislature of a sister State.

14. The statutes of New York, published under the public authority of that State, are properly admitted in evidence in this State.

Hanrick *vs.* Andrews.

Error to the Circuit court of Montgomery.

Assumpsit on a bill of exchange, tried before *A. Martin*, J.

The defendant in error brought an action of *assumpsit* against the plaintiff, in the Circuit court of Montgomery, as the drawer of a bill of exchange, of the following tenor:

" $7000.                    New York, Dec. 20th, 1836.

" Seventy-seven days after date of this first of exchange, (second of the same tenor and date unpaid,) pay to Messrs. Hanrick & Forest, or order, seven thousand dollars, negotiable and payable at the Bank of Mobile, for value received.                    E. HANRICK.

" To *Daniel Carpenter*, Montgomery, Ala."

Which bill was endorsed by Hanrick & Forest, to Pond, Converse & Wadsworth, and by Pond, Converse & Wadsworth, to the defendant in error.

To the declaration, the plaintiff pleaded—

First—*Non-assumpsit;*

Second—That the bill of exchange was made in New York, and the consideration of said bill was usurious in this, that more than seven per cent. interest was reserved upon the loan made; that by the law of New York, the contract was wholly void.

The second plea being demurred to, was adjudged bad by the court, and the case was submitted to the jury on the *general issue.*

The presiding judge sealed a bill of exceptions, which informs us that the defendant in error read to the jury the bill of exchange, with its endorsements, and proved that the same was protested for non-payment, and notice thereof given to the plaintiff in error.

The plaintiff then offered in evidence, a law of the State of New York, which was admitted to be regularly and duly authenticated, and in force in that State at the time the bill was drawn and negotiated. In addition to which, the plaintiff in error offered to prove, that the bill was drawn, accepted and endorsed in the city and State of New York, and made to enable him to raise money upon it—and that all the parties to the bill became such, at the request, and for the accommodation of himself. The plaintiff in error further offered to prove, that the consideration of the bill, was a loan of money made to him, by H. M. Andrews & Co.; that the agreement between H. M. Andrews & Co., and himself, in relation to the loan, was made in the city and State of New York, on or about the eleventh of January, eighteen hundred and thirty-seven.

By the agreement with H. M. Andrews & Co., the plaintiff in error was to receive six thousand three hundred dollars for the bill, ten per cent. being deducted from the face of the same, for exchange and interest. In pursuance of that agreement, the plaintiff received from H. M. Andrews & Co., the sum agreed on the eleventh of January, eighteen hundred and thirty-seven, in the State of New York. Further, the plaintiff in error offered to show, that at the time the agreement was made with H. M. Andrews & Co., and the money paid to him, the current rate of exchange betwen New York and Mobile, was from three to five per cent.

This evidence was offered by the plaintiff in error, to prove that the contract on which the bill was negotiated, was illegal, usurious, and void, by the laws of New York

Hanrick *vs.* Andrews.

—all of which was objected to by the defendant in error, because the bill was payable in the State of Alabama; and whether the bill was founded on a usurious consideration, should be determined by the laws of that State, and not the law of New York. And the objection was sustained by the court, and the evidence rejected: whereupon the plaintiff excepted, &c.

The defendant in error then offered to read to the jury, from a volume purporting to be a *printed copy* of the revised statutes of the State of New York, a law of said State, giving ten per cent. damages upon the sum drawn for, upon any bill of exchange protested for non-payment, drawn by any person in the State of New York, upon any person in any other State than North Carolina, South Carolina, Georgia, Kentucky and Tennessee. He also offered, in connection therewith, a printed extract from the Appendix to the volume, in these words:

" When the printing of the revised statutes shall be completed, the reviewers, or any two of them, shall certify the same to have been compared by them with the original acts, and with the acts amending such originals, and shall deposit a copy so certified, in the office of the Secretary of State, which shall be conclusive evidence of such statutes: such certificate shall be printed in each copy of the revised statutes, published under the direction of the reviewers, and every copy so printed by the printers employed for that purpose, in which such certificate shall be inserted, may be read in evidence in all courts of justice, and before any officer, board or body in this State."

The defendant in error then offered in evidence a

printed certificate, answering to that required by the extract read from the Appendix, dated the fifth of June, eighteen hundred and twenty-nine; to all of which evidence, the plaintiff in error, by his counsel, objected, and prayed the court to exclude the same from the jury; but his objection was overruled, and the evidence read to the jury—whereupon the plaintiff excepted, &c.

The law of New York, offered to be read in evidence by the plaintiff, and rejected by the Circuit court, is a statute of that State, which declares that the legal rate of interest there shall be seven per cent, and no more, " for the loan or forbearance of any money, goods, or things in action."

The fifth section of the act, which is principally relied on, is in these words:

" Section 5. All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatever, and other deposites of goods, or other things whatsoever, whereupon or whereby, there shall be reserved, or taken, or received, or agreed to be reserved or taken, any greater sum or greater value, for the loan or forbearance of any money, goods, or things in action, than is above prescribed, shall be void,—but this section shall not extend to any bills of exchange or promissory notes, payable to order or bearer, in the hands of an endorsee or holder, who shall have received the same in good faith and for valuable consideration, and who had not, at the time of discounting such bill or note, or paying such consideration for the same,—actual notice that such bill or note, had been originally given for an usurious consideration, or upon an usurious contract."

This is so much of the record, as need be recited, in order to a proper understanding of the questions which have been raised in the cause.

*Campbell*, for plaintiff in error.
*Gayle & Craighead*, contra.

*Campbell*, for the plaintiff in error.—The principle for which we contend, is, that the law of New York is to be regarded, in the construction of this contract. It was proven, that the contract under which interest was reserved, was made in New York.

The prohibitions of the statute extend directly to such reservations. The statute is sought to be evaded by the fact, found in the contract, that the bill taken, was payable out of New York.

The contract was one of loan. The interest on that loan was settled in New York. The security for the payment of that loan was completed there. Can the mere fact, that the security was taken payable elsewhere, make a difference? What opportunities for defeating the objects of the statute, would be afforded by such a construction?

The doctrine is admitted, that all the consequences to arise from the non-fulfilment of a contract, are to be determined by the place where that contract is to be performed.

In this case, the INTEREST *complained of*, will not follow the breach of the contract; it entered its inception; it forms a part of the security for the return of the loan; it composes a part of the principal debt.

There is a wide distinction between the cases. Where interest follows, as settled damages, it is governed by the place of performance, for there, damage occurs—(Confl. Laws, 8 Mart. 27.)

It is in this view that the civil law writers consider it. One of them defines interest to be the profit payable to a creditor, upon the money that is due to him—(Martin respecting de Jurisprudence.) Another defines it the indemnity due to a creditor, for the loss he has sustained in his patrimony, and the privation of his gains—(Touillier, 3.)

The writer of the Treatise on Equity, says, that " interest was not esteemed by them (civilians) as any natural produce, but given only in certain cases, to recompense a delay of payment"—(Fonb. Eq. 643.)

It would, then, be the consequence of those principles, that damages are to be estimated where the performance was to occur ; that interest is to be governed by the law of the place of payment.

But, where the contract is one for the loan of money, and interest is the compensation for its use, the principle is opposite. Then, the *locus* of the contract is likewise that where the profit is reserved—and the validity of both is to be tested in that place.

Thus,—if I make a note payable in New York, and fail to pay,—the interest of New York is due :—but when I make a contract payable in New York, and am to pay for the use of the money in the mean time,—the place where the loan is made, is the place to determine the validity of all the stipulations in the contract.

What is the common practice among men ? Not a

perfect standard of what the law is—but it explains what it is universally understood to be.

. Did any bank ever enquire the rate of interest of New York, or of England, when a bill was presented for discount, payable in those countries? or is it pretended, that all the transactions in mercantile paper in the United States, are violations of law?

This distinction between discount and interest, in determining the law of the contract, is very strongly expressed in a quotation from Burgundius—(cited in 8 Martin, 28.) It is strongly enforced in the opinion of the court, in the case I have cited—(8 Martin, 27, and following.) It is stated, that this case is overruled by Judge Story, with the approbation of Chancellor Kent. The point on which there is supposed to be a difference, is the right of the party to contract, with reference to either place.

Now, in relation to the contract of interest, *Martin* does not assert there is any such right: on the contrary, he denies the right to reserve in the contract, a greater rate of interest than the *lex loci contractus* will permit— (8 Mart. 27.)

But he denies this, with regard to the rate of interest deducted out of the contract. Judge Story evidently regards him as asserting, that interest (*ex mora*) is regulated by the *lex loci contractus*, a doctrine he repudiates; and by his failure to distinguish between the two, falls into the error. The proposition last announced by Judge Story, as containing the substance of the authority, is identical with that of Martin. It is at war with his conclusions upon the criticism of Martin. He admits the

9 P                  3

proposition, " that a contract, void by the law of the place of payment, is void every where, though the contract is valid by the law where the contract was made, and interest stipulated. Yet, he says where interest forms a part of the contract, the *lex loci* prevails, unless it shall appear the parties had in view another place— admitting the proposition, that there may be two places of contract : adopting the very proposition, which he had before reprobated Martin for adopting.

When it shall be examined, I have no fears but that the reasoning in the case of Martin, will stand the test of scrutiny, and will be sanctioned by this court, and the Supreme court of the United States.

The other proposition is, that the contract was actually for the return of the money to New York. Exchange, I understand to be a comparison of the currencies of two countries. Exchange is at par, when a given amount of money at one place, will purchase the same amount at another place ; and the difference of exchange, is the excess required to be given of the one. to purchase the same amount of the other. Where Andrews *&* Co. stipulate for interest and exchange, their stipulation is intended to cover the expenses of all the delay and risk, incident to a receipt of the money at Mobile. Such being the case, his loan is actually a loan made in New York, to be returned to New York by the borrower. The case of Lomass *vs.* Barker, was of advances made in New Orleans, to be reimbursed by drafts on New York. The court say, that the lender had the right to the difference of exchange, and in default of payment, to New Orleans interest. It was, therefore, a New Orleans

Hanrick *vs.* Andrews.

contract. So, here all these items are included, so as to determine the locality to be New York.

Thirdly—The court should have admitted the evidence, and left it to the jury, if there was any intention to violate or evade the statute of New York.

*Gayle,* for defendant in error.—The case in 8 Martin's Rep. 1, is where a note was given in New Orleans, payable in New York, reserving ten per cent. interest, which was legal in the former, but usurious in the latter place. If the decision in that case can be sustained, the case is with plaintiff in error; and the adjudications, without conflict, in Europe and America, will be overturned.

The principle stated by Chancellor Kent, (v. 2, p 459,) in his Commentaries, is as follows: "If the contract be made under one government, and is to be performed under another, and the parties had in view the laws of such other country, in reference to the execution of the contract, the general rule is, that the contract, in reference *to its construction and force,* is to be governed by the law of the country or State in which it is to be executed."

Judge Story, in his Conflict of Laws, p. 238, lays down the proposition thus: "But where the contract is either expressly or tacitly to be performed in any other place, (than the place of making the contract,) there, the general rule is in conformity with the presumed intention of the parties, that the contract, *as to its validity, nature, obligation and interpretation, is to be governed by the law of the place of performance.*"

The first case is the one in 2 Burrow's R. 1077, 1078.

This was the case of a bill of exchange. The case in 1 J. R. 93, is the case of a promissory note, void by the laws of France, but valid in New York, where it was payable. The case in 4 Johns. R. 285, is also the case of a note made in Jamaica, and payable in New York. The case of Thompson vs. Powles, referred to in 2 Kent, 460, is also the case of a note, made in England, and payable in America. This contract, or note, on its face, was void by the laws of England, because it reserved a higher rate of interest than those laws allow. The contract would have been void if payable in England, but as it was payable in America, it was held not to be usurious. Here are three cases, of notes which are in point. As to the general principle, as laid down by Kent and Story, we refer to the following authorities, which include as well the principle as the exceptions—(Story's Confl. of Laws, 233, 234, 238, 243, 248, 254; 2 Kent's Com. 459, 460, 461; 6 Peters' R. 172 to 202; 2 J. R. 235; 2 Burrow, 1077; 1 J. R. 93; 4 Term R. 182; 7 do. 242; 3 J. R. 263; 8 J. R. 189; 17 J. R. 511; 4 J. R. 285; 4 Gal. R. 371; N. Hampshire R. 405.)

Acceptances of bills are deemed contracts in the place, and are to be performed—(Story's Confl. of Laws, 263, 274; 4 B. & Ald. 654)—therefore, if an acceptor be an accommodation acceptor, payments under a contract made with drawee, will be deemed payments of the drawee in the place of acceptance—(Story's Con. c. 266.) The points on which the demurrer was sustained, were the same as those contained in the evidence rejected— (See record.)

The plaintiff was an innocent endorsee, (see record,)

and the evidence rejected only tended to show usury in H. M. Andrews & Co.

It is not perceived what influence the agreement as to interest, can have in this case. It is certain that no interest is stipulated in the contract—(See bill of exchange.)

*Craighead*, also for defendant.—Bill drawn in New Orleans on Philadelphia, a foreign bill—(2 Peters' Rep. 486, 170.)  *Lex loci* the place of payment—(6 Cond. R. U. S. 22, note.)

Laws of one country to have no ex-territorial force, &c. except from comity.  No nation should acknowlege the validity of foreign laws, which would affect contracts entered into with a view to other laws—(6 Cond. U. S. Rep. 21.)

Subsequent endorser not competent to prove facts in discharge of prior endorser ; and the drawer of a note can not discharge endorser—(8 Peters' R. 12.)  Where rate of interest is expressed at legal rate, there must be an intention knowingly to contract for, and take usurious interest.  But if both act *bona fide* and innocently the law will not infer a corrupt agreement—(9 Peters' R. 399—settled in the time of Croke Elizabeth, 642; ibid. 741; Croke James, 507; also 9 Peters' R. 400, 401, 402, 403 ; 6 Peters' R. 203, 204 ; 2 Johnson's R. 241; 4 John. 287.)

COLLIER, C. J.—The course of the arguments at the bar, leads us to enquire—

First—Was the plaintiff foreclosed by the judgment on demurrer to his second plea, from introducing evidence

to show that the transaction with H. M. Andrews & Co. was usurious, according to the law of New York?

Second—In determining the question of *usury*, in the negotiation of the bill, does the law of Alabama, or New York, furnish the rule of decision?

Third—Was the evidence offered to the jury, by the plaintiff in error, to establish *usury*,—admissible, as against the defendant?

Fourth—Was the law read from the revised statutes of New York, at the instance of the defendant in error, legally admitted in evidence?

First—The second plea, it may be remarked, is objectionable in itself, and does not present, by direct averment, the legal question which the defendant in error proposed to raise. True, it alleges the bill to have been made in New York, but it does not aver that the loan which formed its consideration, was made, or agreed for, there. Besides, the defence of usury, as it avoids the contract, is clearly allowable under the plea of *non-assumpsit;* for which cause, however, a special plea, disclosing with particularity the facts proposed to be proved in the defence, would not be bad, as with us special demurrers are not tolerated.

So that, without passing upon the merits of the defence, the Circuit court may have adjudged the second plea (for some one, or all the causes we have indicated,) to be bad.

But, even conceding the plea to have tendered the precise defence, which the plaintiff proposed to make by his evidence, and the judgment on demurrer, did not, of itself, authorise the rejection of the evidence, if it were

legally admissible. This point was directly presented, in the case of Cummins vs. Gray, (4 Stew. & Por. R. 403.) In that case, a demurrer to the declaration had been over-ruled : at a subsequent term, the plaintiff demurred to the defendant's pleas, and though the court believed the pleas to be bad, yet, as the declaration was considered defective, the demurrer was visited upon it, and a judg-ment rendered against the plaintiff.

In this court, it was assigned for error, that the Cir-cuit court erred in sustaining the plaintiff's demurrer to his declaration, because the same court, at a previous term, had overruled a demurrer at the instance of the de-fendant. The court considered the assignment not well taken, the objection to the declaration on the plaintiff's demurrer, being presented in a *different form*, than when demurred to by the defendant.

The court proceed further to remark, that " it may so happen, where a special plea, containing matter which would be good under the *general issue*, has been over-ruled on demurrer, and the defendant offers evidence of the same defence under the general issue ; or it may be so, where a motion in arrest of judgment is made, on the same objection to the declaration, for which a demurrer has been overruled ; and, on the same principle, the sup-posed insufficiency of the declaration, was subject to an independent consideration on the demurrer to the pleas." The judgment on demurrer, then, interposed no objection to the introduction of the facts disclosed in the plea, as evidence under the general issue. The case cited is de-cisive of the question, and reason fully warrants the con-clusion.

Second—The solution of this question renders necessary an examination, to some extent, of the doctrine in regard to the *lex loci contractus.* In considering this branch of the law, we are sensible, that we undertake a task of no ordinary difficulty—for no legal topic is more embarrassed by refined distinctions, and the conflicting decisions and *dicta* with which the books, both of the civil and common law, abound. This branch of jurisprudence is far from being matured, but owing to the increase of litigation, and of consequence, its variety throughout the commercial world, it may be considered in a state of rapid advancement towards the establishment of rules and principles by which the application of foreign laws, may, in all cases, be readily determined. Influenced by this state of things, we propose little more than merely to review the authorities within our reach, and state our conclusion *on the point before us, with reference to the facts upon the record,* instead of making the general enquiry, how far contracts are governed the by *lex loci celebratus contractus.*

The general proposition, that the laws of a country have no binding force *extra territorium,* is certainly true ; their authority is admitted abroad, not *ex proprio vigore,* but *ex comitate;* or, as *Huberus* expresses it, *quatenus sine prœjudicio indulgentum frieri potest*—(Story's Confl. of L. 37; 2 Kent's Com. 457; Blanchard vs. Russell, 13 Mass. Rep. 6.)

Mr. Justice Story considers that the phrase, "comity of nations," is most appropriate, as indicating the foundation and extent of the obligation of the laws of one nation within the territories of another. The extra-ter-

Hanrick *vs.* Andrews.

ritorial influence of laws, is derived from the voluntary consent of the nation within which its application is proposed; and they are tacitly adopted *jure gentium*, in the absence of any positive rule, affirming, denying, or restraining their operation; unless they are repugnant to local policy or prejudicial to local interests. It is not the comity of courts, but the comity of nations, which authorises the administration of foreign laws within the limits of another sovereignty—and subject to the limitations we have mentioned, the courts can exercise no discretion on the subject.

The principle upon which one State recognises and applies the laws of another, relative to contracts, results from the courtesy, comity, or mutual convenience of nations, between which commerce has introduced dealings. In fact, the necessary intercourse of mankind, requires that the acts of parties valid where done, should be recognised in other countries, provided they be not contrary to good morals, or repugnant to the policy or positive institutions of the State—(2 Kent's Com. 454; 13 Mass. R. 6; 4 Cowen's R. 511, *et post* in note, and case cited; Story's Con. of L. 232 to 248; Goodman vs. Munks, 8 Porter's R. 84, and cases there cited.)

And we understand the doctrine to be settled, that personal contracts are to have the same validity, interpretation and effect, in every other country, which they have in the country where they were made, or are to be performed. Parties are presumed to be conversant of the laws of the country in reference to which they contract, and to stipulate with regard to them; and it is a maxim, that *locus contractus regit actum*, unless the parties

9 P                          4

have manifested a contrary intention—(Bank of the U. S. vs. Donally, 8 Peters' R. 361; Watson vs. Orr, 3 Dev. R. 161; 2 Kent's Com. 458.)

In regard to the *lex loci*, when the contract is silent as to the place of performance, there is but little difficulty in determining what law is to govern; but when its performance is contemplated in another country, questions the most embarrassing arise—(2 Kent's Com. 455, 459; Story's Con. of L. 9, 10, 25, 29, 303, 307; 4 Cow. R. 510, note *a.*) In stating the general rule, as applicable to the latter description of contracts, there is but little difference in the books.

Mr. Chancellor Kent says, " If a contract be made under one government, and is to be performed under another, and the parties have in view the laws of such other country, in reference to the execution of the contract, the general rule is, that the contract, in respect to its construction and force, is to be governed by the law of the country or State, in which it is to be executed"—(2 Kent's Com. 459.)

Mr. Justice Story expresses himself on the subject thus : " Where the contract is either expressly or tacitly to be performed in any other place, there, the general rule is in conformity to the presumed intention of the parties,— that the contract, as to its validity, nature, obligation and interpretation, is to be governed by the law of the place of performance"—(Story's Con. of L. 333.)

In Blanchard vs. Russell, (13 Mass. R. 4,) in an elaborate examination of the *lex loci*, the court remark, " that it is now a principle generally received, that contracts are to be construed and interpreted, according to the laws

Hanrick *vs.* Andrews.

of the State in which they are made, unless from their tenor it is perceived that they were entered into with a view to the laws of some other State—(See further, Van Reimsdyke vs. Kane, 1 Gallison's R. 371; Thompson vs. Ketchan, 8 Johns. R. 189; Fanning vs. Consequa, 17 Johns. R. 511; Harrison vs. Sterry, 5 Cranch's R. 289; Slocum vs. Pomeroy, 6 Cranch's R. 221; Smith vs. Mead, 3 Conn. R. 253; Toureo vs. Cassin, 1 Nott & McC. R. 173; Ball vs. Gaillard, 1 Nott & McC. Rep. 67; Medbury vs. Hopkins, 3 Conn. Rep. 472; Thompson vs. Ketcham, 4 Johns. R. 288, and note *b*, and cases there cited; Harman vs. Harman, 1 Baldwin's R. 130, cited from Amer. Jurist, April, 1838, p. 178; De Sobry vs. Terrier, 2 Har. & Johns. R. 220; 2 Fonb. Eq. 443, and note *t*; Comyn on Usury, 8, 9, 152, 153; Law Lib. vol. 5; 3 Dall. Rep. 374, note; Consequa vs. Fanning et al, 3 Johns. Ch. R. 602, 610; Conframp et al. vs. Bunel, 4 Dall. R. 419.)

Having taken this brief view of the general doctrine of the *lex loci*, we proceed to a more particular examination of the question before us. It is clearly inferable, from what has been already said, that where parties enter into a contract, without any stipulation for interest, but upon which, on default of prompt payment, interest accrues, its rate must be admeasured by the scale prescribed by the laws of the country where the contract was made; unless the parties contracted in reference to another jurisdiction—in which case, the law of the place of payment will ascertain the *quanium* of interest. This proposition is conceded by the counsel for both parties; but the counsel for the plaintiff insists, that where the parties themselves have stipulated a particular rate of

interest, the *lex loci celebratus* must determine the legality of the stipulation—that the contract, if invalid where made, is void in every other country in which it is sought to be enforced.

To sustain this argument, we have been referred to the case of Depau vs. Humphreys, (8 Martin's Rep. 27, 28.) In that case, the very point came directly in judgment, and is most elaborately and learnedly considered, with a review of many authorities, deduced both from the civil and common law. The learned judge who pronounced the opinion of the court, after remarking that the legal rate of interest, is the measure of damages in obligations to pay money—that the Roman law did not contemplate interest as a profit, at the time of the contract, but only as a consequence resulting from a delay of payment; and that therefore it was regulated,— by the *lex locus destinatæ solutionis*, proceeds as follows: " But in a loan of money, nothing is more common, in countries where the parties are not restrained by law to one rate of interest, to stipulate a particular one, (by their convention,) within the scope of which the law allows; and this interest is called conventional, by contradistinction from the legal interest *ex mora.*

" In such a case as the object of the conventional interest, is to afford to the lender a compensation for the profit he foregoes, in yielding the use of his money to the borrower, it should seem that the circumstance of the place of payment, differing from that in which the lender parts with his money, ought to have no influence in the fixation of the rate of interest." The learned judge then refers to previous decisions, in which that

Hanrick *vs*. Andrews.

court had decided, First—That an instrument, as to its form, and the formalities attending its execution, the mode of construing it, the meaning to be attached to the expressions by which the parties have contracted, and the nature and validity of the contract, was subject to the laws of the place where it was made. Second— That the laws of the place where the contract is to be executed, must regulate its performance, continues his opinion thus: "If these principles be correct, there must be two *loci contractus'* to be considered in law, in a contract which is to be performed in a different place than that in which it is entered into ; *locus celebratus contractus; locus solutionis;* in many an instrument, more than two places as *loci contractus* are to be considered. The holder of a protested bill of exchange has his remedy against the acceptor, according to the laws of the place on which the bill is drawn ; against the drawer, according to the law of the place in which the bill was drawn; and when there are several indorsers, he may have his remedy against each of them according to the law of the place where he indorsed. Reason points out, in every act, the place in which it is to take place, is to be considered in ascertaining its validity and effect." The learned judge closes his argument with the conclusion, that in a note executed in Louisiana, on a loan of money made there, the creditor may stipulate for the legal rate of conventional interest authorised by the law of that State, although such a rate be disallowed in the place in which payment is to be made.

In treating of the question before us, Mr. Chancellor Kent employs this language: "If interest be not stipula-

Hanrick *vs.* Andrews.

ted in the contract, and the money be payable at a given time, in a different territory, and there be a default in payment, the law of the place of payment regulates the allowance of interest, for the default arises there. The drawer may consequently be liable to one rate of damages, and the indorser to another, if he indorses at a different place, for every indorsement is a new contract. If, however, the rate of interest be specified in the contract, and it be according to the law of the place where the contract was made, though the rate be higher than is lawful by the law of the place where payment was to be made, the specified rate of interest at the place of the contract has been allowed by the courts of justice in that place, for that is part of the substance of the contract. The general doctrine is, that the law of the place where the contract is made, is to determine the rate of interest, when the contract specifically gives interest; and this will be the case, though the loan be secured by a mortgage on lands in another State, unless there be circumstances to show, that the parties had in view the law of the latter place, in respect to interest. When that is the case, the rate of interest of the place of payment is to govern"—(2 Kent's Com. 460.)

Mr. Justice Story, in an examination of the *lex loci*, in respect to foreign contracts, thinks that Mr. Chancellor Kent, in the citation we have made from his Commentaries, has correctly laid down the modern doctrine, and is fully borne out by the authorities—(Story's Confl. of L. 253.) But the learned judge is of opinion, that the case of Depau *vs.* Humphreys, is not a correct ascertainment of the law, even upon the authority of foreign jurists;

and after briefly noticing the case of Fanning vs. Conse-
qua, (17 Johns. R. 511,) thus introduces the Louisiana
decision: "Another case has arisen of a very different
character.    A note was given in New Orleans, payable
in New York, for a large sum, bearing an interest of ten
per cent., being the legal interest of Louisiana, the New
York legal interest being seven per cent. only.    The
question was, whether the note was tainted with usu-
ry, and therefore void, as it would be if made in New
York.    The Supreme court of Louisiana decided, that it
was not usurious, and that the interest might be stipula-
ted for, according to the law of Louisiana, or that of New
York.    The court seem to have founded their judgment
upon the ground, that in the sense of the general rule,
there are, or may be two places of contract; that in
which it is made ; and that in which it is to be perform-
ed ; *locus ubi contractus celebratus est; locus destinatæ so-
lutionis;* and therefore, if the law of both places is not
violated, the contract for interest will be valid."

The learned judge, in supposing that the Supreme
court of Louisiana considered it necessary to the defence
of usury, that both the *lex loci celebratus* and the *lex loci
solutionis* should be violated, fell into an error.    We have
examined the opinion most carefully, and according to
our understanding, the court intended to say, and have,
in effect, so said, that there is one *locus contractus*, so far
as it relates to the mode of construeing them, (contracts)
the meaning to be attached to the expressions by which
the parties bound themselves, and the nature and validity
of the engagement.

There is another *locus contractus,* as it respects "the

performance," which "must be according to the law of the place, where it is to take place." That these two form the *loci contractus*, which are to be considered in law, in a contract which is to be performed at a different place than that at which it is entered into; and that every question (depending upon its character) relating to such a contract, must be referred to the law of the one place or the other place, for solution. Such is the sense (and none other, as we understand it,) in which it was said by the Supreme court of Louisiana, that there were two *loci contractus*. We gather further from the opinion, that usury entered into the validity of contracts, and was to be ascertained in that case, by the law of Louisiana—that if the contract was free from its taint, according to the law of that State, though it reserved a higher rate of interest than the law of New York authorised, yet it was valid every where; but if usurious in Louisiana, it was void in every other State, without regard to their local regulations.

Mr. Justice Story, in the section immediately following that we have quoted, admits that there may be two *loci contractus* in some sense. "There is no doubt," says he, "that the phrase *lex loci contractus* may have a double meaning or aspect, and that it may indifferently indicate the place, where the contract is actually made, or that where it is virtually made according to the intent of the parties, that is the place of performance. *Everard*, as well as other distinguished jurists, refers to this distinc-. tion. *Voet* places it in a strong light"—(Story's Confl. of L. 248; see also 195.) The learned author then examines the works of some of the foreign jurists on the

Hanrick vs. Andrews.

subject, and expresses the opinion, that they do not sustain the case of Depau vs. Humphreys.

We have already seen, that Mr. Justice Story affirms the correctness of the rule, in regard to conventional interest, as stated by Mr. Chancellor Kent, but it does not appear (as argued for the defendant in error,) that the latter approves the criticism of the former, upon the Louisiana decision. All that is said in relation to it, is found in a note, in these words: "The decision, in this case, is accompanied with a full discussion of the authorities in the English and American Law, and of the opinions of the European continental civilians. The law of this case has been critically examined by Mr. Justice Story, (Com. on the Confl. of L. 248, 254,) and he does not think that the foreign jurists bear out the case"—(Note a 2, Kent's Com. 460.)

We have noticed thus at length, the arguments and conclusions to be found in the *Conflict of Laws*, because they were much relied on for the defendant, and for the additional reason, that we desired to place them in *juxtaposition* with the opinion in Depau vs. Humphreys, that it might be seen the learned author did not differ so widely from the court in that case, as he himself supposed.

We now dismiss the authorities, to consider, for a moment, the transaction in New York, in reference to the reason and nature of the thing. The evidence upon the record informs us, that the bill was drawn, indorsed and accepted in New York, to enable the drawer to raise money—that its consideration was a loan of money made to the plaintiff in error by II. M. Andrews & Co.—

9 P                  5

and that the loan was agreed for, and the money paid to the plaintiff in the city and State of New York, about the eleventh January, eighteen hunded and thirty-seven.

Even conceding that the stipulated place of payment, shall determine the validity of a contract, it is difficult to conceive how the law of that place can operate upon a bill of exchange, so long as it remains in the hands of the party for whose accommodation it was made—before he has actually negotiated it. Until then, no legal liability is incurred by the parties to it, but it is only when put forth into the world, that it becomes an effective security for money. So long, then, as the bill in question remained in the hands of the drawer, it was not an operative contract. Messrs. Andrews & Co. became its proprietors, by lending to the plaintiff a sum greatly below its nominal amount, and in this it is alleged the *usury* consists. The payment of the money under the agreement for a loan, and the transfer of the bill, must be regarded as simultaneous acts, the former being a consideration for the latter ; so that if the one be illegal, the other imposed no obligation in law. This, to us, would seem to be the deduction of reason—and though perhaps we might rest our opinion opon higher and less disputable ground, we are prepared to affirm it to be law.

The purchase of the bill was complete in New York; —the interest upon the loan was there paid, or retained, which is the same thing, so that from the proof in the record, there is little pretence for saying that the plaintiff, or H. M. Andrews & Co., had in view the law of Alabama, in respect to the interest charged upon the loan.

Hanrick *vs.* Andrews.

Instead of there being "circumstances to show that the parties had in view the laws of the latter place, in respect to interest," the reverse is rather inferable. The bill did not contemplate the payment of interest upon its face, and it was only in default of payment at maturity, that interest *ex mora*, or more properly *ex lege*, could accrue. This, it is true, would be regulated by the law of this State; because it was here that the default must have happened. This view is fully sustained by the rule cited from 2 *Kent's Commentaries*, 460, *which we have shown has the sanction of the learned author of the Conflict Laws*, and is decisive of the question, so far as it relates to the admissibility of the evidence rejected by the Circuit court.

The bill expressing on its face the place of payment to be in Alabama, is not conclusive to show that the parties contracted in reference to the interest prescribed by the law of this State. *In the absence of proof, aliunde, such would be its effect,* but extrinsic proof is clearly admissible to explain the intention of the parties. Reason, and the analogies of the law, authorize it. And in Thompson vs. Powles, (2 Simons' R. 194,) the Vice Chancellor shows, that it is permissible to look beyond the contract itself. If the law were otherwise, the statute against usury in force, in the *locus celebratus contractus,* might be avoided with impunity, at pleasure.

In citing, with approbation, the rule as laid down by the learned commentator on American law, we do not desire to be understood as either repudiating or approving the case of Depau vs. Humphreys. We regard the authority of both as adverse to the defendants in error,

but prefer taking the rule in the Commentaries as our guide; because we can do so without committing ourselves upon the general question, whether the *lex loci celebratus*, or the *lex loci solutionis*, will decide the validity of the contract, where the place at which performance is stipulated, is different from that where it was made.

We decline expressing any opinion upon the question, how far the difference of exchange between New York, and Alabama, in favor of the former, can countervail the defence of usury, as interposed by the plaintiff in error, inasmuch as it is not necessary to a decision of the case by this court, and because a question precisely analogous (it is said) to that presented by the record, is destined soon to undergo an examination before the Supreme Court of the United States.*

Third—This question was directly raised in Hackley vs. Sprague, (10 Wend. R. 113.) That was an action by the indorsee of a promissory note, against the maker, and it was objected, that under the latter part of the fifth section of the interest act, as contained in the New York revised statutes, the defence of usury was not al-

*Note.—The case alluded to is Andrews vs. Pond, et al. 13 Peters' Rep. ---. This case sustains our opinion on the main question, viz., that the law of New York is the criterion by which it is to be ascertained, whether the contract is usurious. The court also determine, that on a loan of money in New York, to be repaid in Alabama, it is allowable for the lender to reserve the market rate of exchange, in addition to legal interest, though it may exceed the cost of transportation of specie, insurance, &c., if the reservation be made *bona fide*, and not with intent to evade the law against usury.

Hanrick *vs.* Andrews.

lowable. But the court thought otherwise, and thus express their opinion on the point: "It is presumed that the intention of the Legislature was to protect the innocent holder for a valuable consideration, who had received the note in the usual course of trade, *before it was due.* The law merchant goes no farther in any case, when the maker has a legal or equitable defence, as against the payee; and where the Legislature declare a note void, they surely intend to extend the same defence to the maker, which he would have if he had paid the note to the payee. The true construction of this section is, that usurious paper shall not be avoided in the hands of an innocent holder for value paid, when received in the usual course of business,—that is, before it arrives at maturity. If it is transferred afterwards, the holder takes it as he does all other negotiable paper, subject to any defence, which the maker has, as against the payee."

Thus, we discover that it is incumbent upon an indorsee, if he would prevent *usury* from being set up against him, to show that he became the *innocent holder of the paper, for a valuable consideration, before its maturity.* Nothing of this kind seems to have been shown or attempted by the defendant in error.

Fourth—The statute of New York, which was read to the jury by the defendant, was contained in a book, printed and published under the authority of that State. According to the law, as admitted in this State, the act of Congress of May, seventeen hundred and ninety, has not been considered as excluding all other modes of authenticating the acts of the Legislature of a sister State, but the statute book has been received as evidence of them,

where the book appeared to have been published under the sanction and direction of the public—(Huff vs. Campbell, 1 Stew. R. 543; Cox & Cox vs. Robinson, 2 Stew. & Por. R. 94.) Such evidence has also been admitted in some of the other States—(Thompson vs. Musser, 1 Dallas' R. 462; Biddis vs. James, 6 Binney, 321; State vs. Stade, 1 Chip. R. 303; Young vs. The Bank of Alexandria, 4 Cranch, 388.) .

There was, then, no error in admitting the statute of New York to be read to the jury—*but for the rejection of the evidence offered by the plaintiff in error, the judgment of the Circuit court is reversed, and the case remanded.*