No. 2842.—T. T. TYREE & CO. *v.* SANDS & CO.—THOMAS P. MILLER & Co., Intervenors.

The comity of nations has well nigh the force of a rule of international law in private matters, (*jus gentium privatum*).

It is not the comity of courts but the comity of nations which authorizes the administration of foreign laws within the limits of another sovereignty; and, subject to certain familiar limitations, the courts have no discretion in the matter.

As a general rule, a *personal* contract, with its attendant privileges and effects, when made in another State, will be enforced in Louisiana upon *movables* according to the *lex loci contractus*, provided such enforcement be not contrary to our policy, and does not violate the order of priorities established by our laws, and does not injure the rights of our own citizens; and provided further, that we have by our own law, *lex fori*, the remedy which is asked.

The plaintiffs in April, 1869, having by the laws of Alabama a vendor's lien on cotton superior to that of the intervenors as pledgees, and it appearing that all parties were citizens of and made their contracts in Mobile; that an identical pledge was provided in New Orleans; and that a sufficient remedy existed by the law of Louisiana: Held—That the courts of Louisiana would enforce such vendor's lien upon the cotton sequestered in New Orleans.

There can be no imprudent confidence in trusting one's property to the guardianship of the law.

The plaintiffs having their lien, and the intervenors knowing the law and having it in their power to know the facts, the latter can not invoke against the former the rule that "as between two innocent parties the loss should fall on the one whose imprudent confidence has enabled the wrong-doer to get credit."

APPEAL from the Fourth District Court, parish of Orleans. *Théard, J. Campbell, Spofford & Campbell,* for plaintiffs and appellees. *Randell Hunt* and *W. H. Hunt,* and *Dirrhammer & Kennard,* for intervenors and appellants.

HOWE, J. On the thirtieth of March, 1869, the plaintiffs, Tyree & Co., sold to the defendants, Sands & Co., in the city of Mobile, one hundred and twelve bales of cotton. On the thirty-first of March the plaintiffs gave to brokers who had bought it orders on the warehouse for the cotton, and it was delivered. On the day of the sale the defendants, Sands & Co., made an arrangement with the intervenors, Thomas P. Miller & Co., to sell the latter a draft for $25,000, to be drawn by Sands & Co., on Gardner, Bacon & Co., of New York, to which was to be attached as collateral a bill of lading for two hundred bales of cotton. The intervenors handed the defendants $12,000 on account of this negotiation on the thirtieth, and the balance of the amount on the thirty-first of March, the defendants on the latter day delivering their draft, but not the bill of lading. The cotton, which included that sold by plaintiffs, was shipped on the first of April for New York via New Orleans, and bills of lading taken by Sands & Co., not to the order or in favor of intervenors, but in error to the order of Gardner, Bacon & Co. One of these bills was mailed to Gardner, Bacon & Co. by Sands & Co., in a letter of advice of April 1; a duplicate went forward on the vessel, and the triplicate was retained by Sands & Co. On the second of April Sands & Co. failed, and on that

day, after their suspension, delivered to the intervenors this triplicate bill of lading.

On the third of April, the plaintiffs not having been paid for the one hundred and twelve bales sold by them, although the sale was "for cash," sequestered the same in New Orleans, and Miller & Co. intervened, claiming the cotton in virtue of the bill of lading and the facts above set forth.

The court below decided in favor of the plaintiffs, and intervenors appealed.

Without dwelling on the infirmities of intervenors' title as pledgees in consequence of the error in the bill of lading, we prefer to pass at once on the principal point in the case.

By the laws of Alabama, in evidence, it is provided that "when a contract is made in the city of Mobile, by a factor for the sale of cotton, and by the general usage of the trade in that city, it is considered a sale for cash, but by such usage the purchaser, his broker or agent, is allowed a reasonable time to examine, reweigh and resample such cotton before paying for it; the seller shall have a lien, and a lien is hereby given him on such cotton for the purchase money, which lien is paramount to any sale or transfer of the cotton by such purchaser, and shall continue for *fifteen* days from the time when the cotton or an order for its delivery on any warehouseman with whom it was stored was delivered to the purchaser, his factor or agent, and no longer." Laws of 1858.

By the same statute the vendor could enforce this lien by a seizure.

By the law of Louisiana at the date of these transactions, a privilege indentical in character and effect existed in favor of the vendor of cotton in New Orleans for *five* days, and this privilege could be here enforced by sequestration. Laws of 1855, No. 298. The seizure in this case was made before the lapse of *five* days from the sale.

By neither the law of Alabama nor of Louisiana in 1869, did this potent privilege require to be recorded in any way.

All the parties to this litigation are citizens of Mobile.

We see no reason, then, why upon well settled principles of public law, we should not enforce the lien of the plaintiffs. The existence of decent relations between civilized countries, and *a fortiori* between the States of this nation, depends in a considerable measure upon the enforcement by the courts of such liens as a matter of comity. And this comity we understand to be something more than a ceremonial politeness which may be exercised by our courts, or not, as the humor may seize them. It has, on the contrary, well nigh the force of a rule of international law in private matters, *jus gentium privatum*. 5 La. 299. "It is not the comity of courts but the comity of nations which authorizes the administration of foreign laws within the limits of

another sovereignty." 9 Porter (Ala.) 25. And, subject to certain familiar limitations, the courts have no discretion in the matter.

As a general rule a personal contract, with its attendant privileges and effects, when made in another State, will be enforced in this State upon movables, according to the *lex loci contractus*; provided such enforcement is not contrary to our policy, or does not violate the order of priorities established under our law; or does not injure the rights of our own citizens; and, provided further, that we have by the *lex fori* the remedy which is asked. Story. on Conflict of Laws, 322 *b.*; et seq.; Kent Com., vol. 2, page 458, and authorities cited. Hanrick vs. Andrews, 9 Porter 25; Ohio Ins. Co. vs. Edmonston, 5 La. 299; Dobbin vs. Hewitt, 19 An. 513.

Thus Mr. Story mentions " the lien of a vendor upon real estate, *      *      the lien given for the purchase money upon goods or merchandise sold by the civil law, and by the law of some modern countries; the right of stoppage in transitu of the vendor of goods;      *      * the lien of a bottomry bond on the thing pledged; the lien of marines on the ship for their wages; the priority of payment *in rem* which the law sometimes attaches to peculiar debts or to particular persons."

"In these and like cases," he says, " where the lien or privilege is created by the *lex loci contractus,* it will generally, although not universally, be respected and enforced in all places where the property is found, or where the right can be beneficially *enforced by the lex fori.*"

Now, the enforcement of the plaintiffs' lien was not contrary to our public policy, for at the moment it sprang into being an identical privilege was provided by the Louisiana statute. It did not violate any priority established by our laws, but, on the contrary, was in harmony with our rules of preference. It did not injure the rights of our own citizens, for no such rights were involved. And finally, it did not infringe the rule that the remedy must in all cases be in accordance with the law of the forum, for by the law of the forum the vendor of cotton could within five days enforce his lien by sequestration—the process adopted by the plaintiffs in this case.

Much stress was laid in the able arguments of the intervenors' counsel upon the equities of their case, and they have invoked the rule that as between two innocent parties, the loss should fall on the one " who by his imprudent confidence has enabled the wrong-doer to get credit with innocent parties." The case of Campbell vs. Penn, 7 An. 371, from which this rule is here quoted, is clearly not in point, having been decided in 1852, when the vendor of cotton had not the privilege which in 1869 existed for five days after sale and delivery, both in New Orleans and Mobile. In the case of Miltenberger vs. Hatch, 13 An. 528, decided in 1858, after this privilege had been established, no allusion was made to the equities in favor of intervenors,

but the vendor's lien was enforced. We incline to think that the " imprudent confidence " was reposed in this case rather by the intervenors than by the plaintiffs. But however this may be as matter of fact, we apprehend the rule cited has no application to plaintiffs. They had their lien. They had a right to rely upon it as upon any other legal protection. There can be no " imprudent confidence " in trusting one's property to the guardianship of the law. The intervenors, bankers of Mobile, knew the law, and were aware of the possibility of plaintiffs' lien. They might have easily asked if the cotton was paid for; they might have required their money to be used in paying for it. It is as likely as not that they knew it was not paid for, for they show by evidence and urge in argument that in Mobile the proceeds of drafts cashed as they cashed that of defendants, are usually applied to the *payment* of what the drawer owes for the cotton which he expects to pledge as collateral—" in this way aiding in the purchase of cotton."

Judgment affirmed.