104 So.2d 553

**J. D. MORRIS**

v.

**Claude YANCEY.**

*1 Div. 774.*

Supreme Court of Alabama.

July 24, 1958.

Thompson & White, Bay Minette, for appellant.

Wilters & Brantley, Bay Minette, for appellee.

LAWSON, Justice.

This is a statutory ejectment suit. The complaint was filed in the circuit court of Baldwin County on December 23, 1955, by J. D. Morris against Claude Yancey. The defendant pleaded the general issue. When the cause was first tried the court at the conclusion of plaintiff's evidence gave the general affirmative charge with hypothesis in favor of the defendant. There was jury verdict in favor of the defendant, on which the court rendered judgment. The plaintiff appealed to this court. We reversed the judgment of the trial court and remanded the cause for further proceedings. Morris v. Yancey, 266 Ala. 54, 94 So.2d 195. We held in effect that although neither of the parties had shown title to the property, the trial court erred in giving the affirmative charge in favor of the defendant for the reason that the plaintiff's evidence tended to show possession by him for a number of years prior to the possession of the defendant.

There was no change in the pleadings after remandment. On the second trial, where evidence was offered by both parties, the jury returned a verdict in favor of the defendant. The plaintiff's motion for a new trial was overruled. He has again appealed to this court.

The plaintiff sued to recover possession of "All East Fraction of Section 24 Township 4 South Range 1 East situated in Baldwin County, Alabama," except four acres described in the complaint by metes and bounds, which four acres we will sometimes refer to hereafter as the Yancey home place.

The opinion on former appeal did not describe the property in the way it is described in the complaint, although the property there described is in fact the same as that for which the plaintiff sued to recover possession.

We will refer to the lands described in the complaint, including the Yancey home place, as the section. The section is a long narrow strip of land. Its width at some points is said to be two acres, which we understand to be approximately 420 feet. It is not that wide at other points. Its exact length is not shown, but there is testimony to the effect that it is between a mile and a half and two miles in length. It is bounded on the west by Bay Minette Creek and on the north by Bay Minette Bay. The northernmost part of the section is bounded on the east by Bay Minette Bay. The remainder of the eastern boundary of the section is a high bluff or ridge. The southern boundary is described as being "the Woochester lands." The northern part of the section is called Cedar Point.

The section is described by one witness as being "nothing but swamp lands" suitable only for pasture and timber and the operation of fishing camps on the southern part. Another witness said that the whole section is "low, marshy, swamp lands" which are not suitable for cultivation. The section is "full of bayous" and most of it is covered by water at high tide. At flood tide all of the section is covered by water except a few mounds situated at Cedar Point and on the Yancy home place, where the defendant maintains his home.

The southern boundary of the Yancey home place is approximately 850 feet north of the southern boundary of the section. The Yancey home place extends northward at some points as much as 444 feet.

In ejectment, to authorize the recovery by the plaintiff, it must be made to appear by the evidence that plaintiff, at the commencement of the suit, had the legal title to the land sued for and the right to the immediate possession. A further cardinal rule, applicable to this character of action, is that the plaintiff must recover on the strength of his own title, without regard to the weakness of his adversary. Carpenter v. Joiner, 151 Ala. 454, 44 So. 424; Watson v. Spence, 258 Ala. 371, 62 So.2d 919.

The plaintiff, to establish legal title in himself, offered evidence substantially as follows: He came to Baldwin County in 1938. During the year 1939 while he was cutting timber for the Spanish Fort Development Company, he inadvertently cut timber on the section and in that way he "found out about the land." Apparently the plaintiff was cutting timber on the Woochester land which, as we have heretofore indicated, forms the southern boundary of the section, if we understand this record correctly. At that time the defendant was living on the four-acre tract, which we have called the Yancey home place. There were several fishing shacks on that place, including the one in which Yancey, the defendant, lived. Yancey maintained a garden near his home. In 1940 the plaintiff says that he began claiming the section as his property but he did not post "no trespassing" signs. In that year he built a "shotgun house," which consisted of one long room, at a point "just north of the south line of Section 24." He operated a sawmill, which we understand the record to show was located about 413 feet south of the southern boundary line of the section. In regard to the use to which the one-room house was put, the plaintiff stated: "As long as we were in the mill business we had tenants in it and prior to that we had tenants and when we had no tenant, we had timber stacked." As going to show his possession of that part of the section north of the Yancey home place, the plaintiff testified that in 1940 and 1941 he cut timber and in 1943 and 1944 he kept a boat "tied up" at Cedar Point, which boat was used daily. He permitted a man by the name of Willie Green to cut ten or twelve cedar posts from

the part of the section north of the Yancey home place. He "burnt" that part of the section and he gave four persons permits to hunt on that land.

In regard to that part of the section which lies south of the Yancey home place, witness testified that he not only built the one-room house thereon, but that he cleared the swamp and underbrush and cut many trees and hardwood logs from that land. He further testified that he hauled sand from the southeast corner of the section and stacked logs all over the land between his mill and the fence which was around the Yancey home place.

According to plaintiff, he began assessing the section for taxation in 1948, although he had no paper title thereto.

The plaintiff offered in evidence quitclaim deeds made by Litch Wilson and wife and Mary Etta (Wilson) Davison and husband, who claim title under the statute of descent and distribution through the process of devolution as the heirs at law of one Thomas *Willson*. The deed from Litch Wilson and wife was dated January 18, 1950, and that from Mary Etta (Wilson) Davison and husband was dated June 1, 1955. The plaintiff also introduced in evidence a certified copy of a patent issued by the United States to said Thomas Willson. The transcript on this appeal shows the date of the issuance to have been October 1, 1856, while the opinion and transcript on former appeal fixed the date of issuance as October 1, 1846. This variance as to date of issuance is of no importance and is mentioned here only to explain why our two opinions in this case differ in regard to the date of issuance of the patent. We also take note of the fact that the opinion on former appeal inadvertently referred to the patentee as Thomas Wilson rather than Thomas Willson.

The plaintiff also offered evidence going to show that Thomas Willson died intestate and that one of his heirs at law was his son, Henry Thornton Wilson, who also died intestate. There was evidence offered by the plaintiff to the effect that among the heirs at law of Henry Thornton Wilson were his son, Litch Wilson, and his daughter, Mary Etta (Wilson) Davison, from whom plaintiff secured the quitclaim deeds mentioned above.

The two quitclaim deeds were admitted in evidence as going to show muniment of title in plaintiff, as well as color of title. On the first trial those deeds were admitted only to show color of title and it was for that reason, perhaps, that the author of the opinion on first appeal said in part as follows [266 Ala. 54, 94 So.2d 197]; "As we understand the record, neither of the parties to this suit showed title to the property * * *".

The plaintiff further testified that from the time he received his deed from Litch Wilson and wife in January of 1950 until a short time prior to the commencement of this suit, he was in possession of all of the section except the Yancey home place; that the defendant Yancey had not been in possession of any of the section except his home place prior to the time he entered and dispossessed the plaintiff a short time before this suit was filed. Neither Litch Wilson nor Mary Etta (Wilson) Davison was ever in possession of any part of the land. Litch Wilson testified that his father was never in possession but said that he *thought* his grandfather, Thomas Willson, had lived on it.

The evidence outlined above, in view of our holding on the first appeal, made it incumbent upon the defendant to show a better right to the possession of the suit property than that shown by plaintiff. He undertook to do so by presenting evidence which he contends showed that he had acquired title to the entire section by prescription long before the plaintiff acquired his quitclaim deeds and by showing that the plaintiff had never been in possession of any part of the section except with the defendant's permission.

The defendant offered evidence tending to show that his father in 1897 or 1898

constructed a fishing camp on the four-acre tract which we have called the Yancey home place, where he lived until his death in 1933. In his youth the defendant lived there with his father, but later moved to Mobile. He returned in 1928. He was married in 1932 and he and his wife have continued to occupy a home on the Yancey home place since their marriage. The defendant has continuously claimed to own the entire section since the death of his father in 1933.

Evidence was offered on behalf of the defendant tending to show that he had placed signs throughout the entire section warning against trespassing and hunting. He had cut timber and pilings from all parts of the section. He has given hunting permits and he and his wife have endeavored to keep persons off the property who had not secured permits. The evidence further shows that the defendant has kept cows and hogs on the land in the section north of his home place as well as on that south of the home place.

The defendant admitted that Morris had done some burning on the north end of the section and testified that he and certain state officials had tried to catch him in the act. Defendant also admitted that Morris attempted to fence some parts of the property but the fences were destroyed by the defendant.

The defendant never paid any taxes on any part of the section until about 1946 when he acquired a deed from the state to the four-acre tract, that is, the Yancey home place. At that time he began to assess the four-acre tract in his name. The circumstances leading to the sale of the land for taxes are not shown. The defendant did not claim that either he or his father had any paper title to any part of the section prior to the time plaintiff acquired his quitclaim deed in January of 1950 except as to the Yancey home place.

The defendant admitted that the plaintiff had constructed the so-called "shotgun" house near the southern boundary of the section, but said that he did so with defendant's permission and stated further that the plaintiff had never cut any timber or pilings from any part of the section except when paid to do so by the defendant.

Within a few years prior to the time this suit was filed the defendant had constructed a fence on the north, east and south sides of the Yancey home place. There were no other fences constructed by the defendant on the section. However, the evidence tends to show that no other fencing would have been feasible.

The plaintiff was not entitled to the affirmative charge on the theory that he had acquired title by adverse possession. Section 828, Title 7, Code 1940, provides in part as follows:

"Adverse possession cannot confer or defeat title to land unless the party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for ten years before the commencement of the action; or unless he and those through whom he claims shall have annually listed the land for taxation in the proper county for ten years prior to the commencement of the action, if the land is subject to taxation; or, unless he derives title by descent cast, or devise from a predecessor in the title who was in possession of the land. * * * *"

Aside from the fact that the evidence falls far short of showing without dispute that plaintiff was in actual adverse possession of the suit property for the required ten-year period, there is no evidence going to show that any of the other requirements of § 828, Title 7, were met.

It may be that the patent to Thomas Willson and the deeds from Litch Wilson and Mary Etta (Wilson)' Davison to the plaintiff, together with the evidence tending to show that their father

died intestate, as did his father, Thomas Willson, made a prima facie case for the plaintiff. See Doe ex dem. Slaughter v. Roe ex dem. W. M. Carney Mill Co., 221 Ala. 121, 127 So. 671; Landers v. Hayes, 196 Ala. 533, 72 So. 106; Wetzel v. Toston, 248 Ala. 382, 27 So.2d 629. But a quitclaim deed can convey no more interest in the property than the grantor has at the time of conveyance. Houston v. Burke, 253 Ala. 359, 44 So.2d 741. We are of the opinion that the jury would have been justified in finding that neither Litch Wilson nor Mary Etta (Wilson) Davison had any interest in the property at the time they executed their quitclaim deeds to the plaintiff in that the defendant had previously acquired an exclusive title to the land under the doctrine of prescription and repose. We observe here that § 828 (Adverse Possession), Title 7, Code 1940, does not apply to the prescriptive period of twenty years. Walker v. Coley, 264 Ala. 492, 88 So.2d 868.

■ This court has adhered with uniform tenacity to the doctrine of prescription and has repeatedly held that the lapse of twenty years, without recognition of right or admission of liability, operates as an absolute rule of repose. Walker v. Coley, supra; Kidd v. Browne, 200 Ala. 299, 76 So. 65; Case v. Conservation & Land Co., 256 Ala. 46, 53 So.2d 562; Staten v. Shumate, 243 Ala. 261, 9 So.2d 751; Kidd v. Borum, 181 Ala. 144, 61 So. 100; Vidmer v. Lloyd, 184 Ala. 153, 63 So. 943. In Stearnes v. Woodall, 218 Ala. 128, 117 So. 643, after quoting from Kidd v. Borum, supra, we said:

"In this respect the elements on which the doctrine of prescription is applied differ from those of adverse possession. In the first there must be an individual, continuous possession of user, without the recognition of adverse rights, for a period of 20 years, and upon the establishment of such claim and user, the law presumes the existence of all the necessary elements of adverse possession of title

without fuller proof, while under a mere claim of adverse possession through the period prescribed by the statute of limitations no such presumption prevails, and all the elements must be established by him who asserts such possession or title. See Locklin v. Tucker, 208 Ala. 155, 93 So. 896, and cases cited in the last paragraph of the opinion in the case of Jackson v. Elliott, 100 Ala. 669, 13 So. 690." 218 Ala. 130, 117 So. 644.

There is evidence from which the jury could find that the defendant had the open, notorious, exclusive possession of the entire section for a period of twenty years or more prior to the time plaintiff obtained his quitclaim deed from Litch Wilson in 1950; and that neither Thomas Willson nor any of his children or grandchildren, including plaintiff's grantors Litch Wilson and Mary Etta (Wilson) Davison, ever asserted any claim or right to any part of the section or paid taxes on it or sought possession of it or benefits from it during that twenty-year period.

If the jury found those to be the facts, then Litch Wilson and Mary Etta (Wilson) Davison had no title to convey to plaintiff, for the defendant had acquired title under the doctrine of prescription.

■■ In regard to the evidence of the defendant going to show possession of the entire section, we observe that the kind of possession is determined by the condition of the land, not with reference to its being changed into another state, but its then present state. Openness, notoriety and exclusiveness are shown by acts which at the time, considering the state of the land, comport with ownership such as would ordinarily be done by an owner for his own use and for the exclusion of others. Kidd v. Browne, supra.

■ We are of the opinion that the trial court committed no error in submitting the material issues of fact to the jury and in declining to give plaintiff's requested affirmative charge.

■ Under the rule that obtains, there was no error in the court's declining to grant the motion for a new trial on the ground to the effect that the verdict was not sustained by the great preponderance of the evidence. Rountree v. Jackson, 242 Ala. 190, 4 So.2d 743; Cobb v. Malone, 92 Ala. 630, 9 So. 738; Nashville, C. & St. L. Ry. Co. v. Crosby, 194 Ala. 338, 70 So. 7.

■ The trial court did not err to a reversal in overruling the objection interposed by plaintiff to the introduction in evidence by the defendant of a warranty deed executed on April 15, 1955, by one Thomas Wilson to the defendant, which deed purports to convey the entire section. The deed was admitted only for the purpose of showing color of title. The sole objection interposed when the deed was offered "as color of title" was: "We object because it is not shown that the defendant took possession under this deed." Why the defendant saw fit to introduce this deed we do not know but we do not think its offer in evidence as color of title was subject to the only objection interposed.

■ One of the assignments of error is based on the fact that the trial court replied, "No, he didn't" to the following statement made by one of plaintiff's counsel: "May it please the court, the witness testified that was what he was claiming until he got his deed from Thomas Wilson." No objection or exception was made to this remark of the court, nor was there a motion for mistrial. Moreover, we do not think the remark prejudicial. We hold the assignment of error to be without merit. Tucker v. Tucker, 248 Ala. 602, 28 So.2d 637.

■ Assignment of error 26 reads: "For that the court erred in overruling the objection of the Plaintiff to questions and testimony as to 'how long the defendant had been laying claim to the land.'" This assignment of error is too general. Jones v. Adkins, 151 Ala. 316, 44 So. 53; Cable Co.

v. Shelby, 203 Ala. 28, 81 So. 818; Hall v. Pearce, 209 Ala. 397, 96 So. 608; Wootten v. Austin, 218 Ala. 156, 117 So. 652; Kern v. Friedrich, 220 Ala. 581, 126 So. 857.

■ An objection after a responsive answer to a question which indicated the nature of the evidence sought to be elicited is not timely. Scott v. Parker, 216 Ala. 321, 113 So. 495; Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543; Huntsville Knitting Mills v. Butner, 200 Ala. 288, 76 So. 54. Because of this rule assignment of error 29 does not show reversible error.

■ Assignments of error 1–14, 19–24, 27 and 28 present nothing for review. They do not allege error for failure to grant the motion for new trial, nor do they allege error by the trial court in any respect. This court has repeatedly held that only adverse rulings of the trial court are subject to an assignment of error on appeal from a judgment in a civil case based on a jury verdict. Bertolla v. Kaiser, Ala., 103 So.2d 736;[1] Thompson v. State, Ala., 99 So.2d 198;[2] Mulkin v. McDonough Construction Co. of Ga., 266 Ala. 281, 95 So.2d 921; King v. Jackson, 264 Ala. 339, 87 So.2d 623; Central of Georgia Ry. Co. v. McDaniel, 262 Ala. 227, 78 So.2d 290; Life & Casualty Ins. Co. of Tennessee v. Womack, 228 Ala. 70, 151 So. 880.

■ Assignment of error 30 is concerned with a question which was not answered by the witness. There is, therefore, no reversible error shown by this assignment. Dorsey Trailers, Inc., v. Foreman, 260 Ala. 141, 69 So.2d 459; Allison v. Owens, 248 Ala. 412, 27 So.2d 785.

■ Charge 17 requested by the plaintiff was refused without error. If not otherwise bad, it was properly refused for the reason that it tends to ignore the defendant's claim of title by prescription.

We have given consideration to all of the assignments of error which are in proper form and which have been sufficiently

1. Ante, p. 435.

2. Ante, p. 22.

argued in brief. We find no error to reverse in any of those assignments. It follows that the judgment of the trial court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.

