ALMON, Justice.
This is an appeal from a judgment fixing the boundary line between adjoining land owners. We reverse.
In 1935, L. J., and Esther Bussey purchased a parcel of land in Talladega County, Alabama, from Blance Best. They conveyed this parcel to one of their sons, Gerald, in 1964. In 1972, Gerald sold the property to his brother Dan and his wife, Gabie. The coterminous parcel of land was purchased in 1955 from B. S. Storey by Howard Bussey, Dan and Gerald’s brother. The two parcels, both of which were used for farming, were situated so that the western boundary of Howard’s property formed the eastern boundary of Dan’s property. Due to an error in the deed descriptions, however, the boundary lines overlapped. (See appended diagram supplied by this Court, not to scale.) This error was discovered in 1962 when Howard had his property surveyed. No issue was made of the error at that time. A second survey, conducted in 1974 at Howard’s request, yielded the same result. Notwithstanding the results of this survey, Dan continued his practice of farming over the boundary line described in his deed eastward up to an old barbed wire fence located on what is alleged to be Howard’s property. In those areas where the barbed wire fence no longer exists, either a hedgerow or turnrow was, or is visible. In 1975, Howard filed suit, alleging a dispute over the common boundary and requesting the court to establish the true line. Dan and Gabie answered by alleging that they or their predecessors in title had adversely possessed the strip of land in question and therefore the old fence and hedgerow had become the true boundary between the two parcels.
The court granted Howard’s motion to permit Moody Ray to enter upon the property and survey the boundaries. Ray’s survey showed that the boundary line according to the description in Howard’s deed was approximately 250 feet west of the common boundary asserted by Dan and Gabie.
Upon completion of the testimony, the trial court determined that neither L. J. *909 Bussey, nor his son and successor to title Gerald, had the requisite intent to adversely possess the land in question. The court based its finding on the silence of both L. J. and Gerald subsequent to the two surveys of Howard’s property. The court further determined, without explanation, that their possession was not continuous. Accordingly, the court entered a decree which established the boundary line as that found by Moody Ray in his survey.
At trial, the deposition of L. J. Bussey was offered and admitted into evidence. He testified that he has been familiar with the property and property lines in question for more than sixty-three years. According to L. J., he, Gerald and Dan have farmed up to the old fence and hedgerow that established the common boundary line between the properties presently owned by Dan and Howard for more than forty years. He stated that the fence and hedgerow had established the common boundary between the two parcels for at least sixty and probably closer to one-hundred years. He also testified that during the time he farmed the property now owned by Dan, that Howard had helped him cultivate the land and did so up to the common boundary of the fence and the hedgerow. During the past sixty years no one else to his knowledge has claimed ownership west of the fence until now.
Sam Allen Smith testified that he had rented from Storey the property now owned by Howard. He farmed the property for fifteen years and during that time he farmed up to the barbed wire fence which he understood to be the property line. The fence was the same one described by L. J. Bussey.
Mildred Smith, one of Dan and Howard’s sisters and no relation to Sam Allen Smith, testified she was fifty-nine years old and had been raised on the property in question. She further testified that the old fence established the common boundary line between the two properties and that it was customary for the owners and lessees to farm up to that fence.
An aerial photograph of the property was introduced into evidence during the testimony of two Agricultural Stabilization and Conservation Service employees. The photograph showed the common boundary as the barbed wire fence. Mary Forrest testified that the boundary had been placed on the map based upon the Service’s information and investigation. Maurice Christopher stated that the photograph reflected the boundary as he had known it for more than thirty years.
Howard Bussey testified that there was a visible turnrow between the two parcels prior to the time he purchased his property from Storey in 1955, but that it had not remained due to subsequent cultivation.
The foregoing makes it clear that from the time L. J. purchased his property in 1935 until Howard purchased his land from Storey in 1955, L. J. Bussey farmed the land up to the barbed wire fence. Property owners, lessees and others in the community considered the fence to be the true boundary between the two tracts.
The law says that where a coterminous landowner holds actual possession of a disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken. Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423 (1964). In this instance the twenty-year prescriptive period was satisfied. It is beyond dispute that L. J. Bus-sey met the above stated requirements and hence gained title of the land up to the barbed wire fence by adverse possession. Such was the case before Howard had purchased his property from Storey. The fact that L. J. and Howard later farmed the adjoining properties as one continuous field in no way changes this result. The applicable rule was stated in Mardis v. Nichols, 393 So.2d 976 (Ala.1981), as follows:
“For the purpose of effecting title by adverse possession, where all the tradi *910 tional elements are present, tacking of periods of possession by successive possessors is permitted against the coterminous owner seeking to defeat such title, unless there is &' finding, supported by the evidence, that the claimant’s predecessor in title did not intend to convey the disputed strip. We hold that this rule should apply even though the conveying instrument contains no legal description of the property in question, and irrespective of the period for which the property was possessed by the present claimant’s predecessor in title.”
In the present case, Dan and Gabie entered into possession of the entire property up to the barbed wire fence and hence such possession along with transfer of the deed was sufficient to raise the privity essential to allow tacking of their predecessor’s claim of title by adverse possession to their own claim. It is clear from the deposition of L. J. Bussey, the father of the principal litigants, that he did in fact possess and intended to possess the property up to the old wire fence.
It follows, therefore, that the trial judge’s determination of the issues before him was erroneous and is due to be reversed. The case is remanded to the Circuit Court to make a determination of the exact location of the common boundary, which has been described as being an old barbed wire fence and hedgerow, and to establish the same as the true boundary between the properties involved.
REVERSED AND REMANDED.
TORBERT, C. J., and FAULKNER, JONES and ADAMS, JJ., concur.
*911 APPENDIX