This is an appeal from a judgment entered in a boundary line dispute between coterminous landowners. After an ore tenus hearing, the trial court declared that a fence line separating the properties owned by the plaintiffs (Glenn Byrd, Marilyn Byrd, A. Marie Byrd Hammond, and Doyal Byrd) and the defendants (Guy and Walter Sparks) marked the boundary line between their properties. From that judgment, the defendants appeal. *Page 213 
 FACTS
The properties presently owned by the plaintiffs and the defendants were once wholly owned by G.W. Parker and his wife, Bertie Parker. During the time that the Parkers owned the property, Mr. Parker erected a fence that crossed their property in an east-west direction. On December 7, 1935, the Parkers conveyed the property located on the south side of their fence line to O.P. Sivley and his wife, Bertha Sivley. On February 20, 1945, the Sivleys conveyed their property to B.P. Sparks and his wife, Lillie Mae Sparks.
On July 5, 1955, the Sparkses conveyed to their son, Walter Sparks, a portion of their property located south of the fence line. Finally on October 20, 1956, the Sparkses conveyed to their other son, Guy Sparks, the rest of the land lying south of the fence line. The brothers' properties are adjacent.
On January 30, 1946, the Parkers had conveyed the property located on the north side of their fence line to Earl Brewer and his wife, Mildred Brewer. In 1963, the Brewers paved a dirt road once used by the Parkers as a means of access to and exit from their property from a county road known as the "Old Hillsboro Road." The paved road runs next to, and parallel with, the north side of the fence line. In 1966, the Brewers erected a new fence that was built next to and that ran parallel with the Parkers' old fence. On March 8, 1974, Earl Brewer conveyed the property to Pruitt Parker and his wife, Gussie Parker.[1] On July 24, 1979, Pruitt and Gussie Parker conveyed their property to Glenn Byrd and his wife, Marilyn Byrd. In 1980, Mr. Byrd upgraded the paved road and also constructed some culverts next to it. On June 12, 1984, the Byrds conveyed a portion of their property to Glenn's sister, A. Marie Byrd Hammond, and also conveyed another portion of their property to Glenn's brother, Doyal Byrd.
At the time that G.W. and Bertie Parker conveyed their property to the Brewers, Mr. Parker walked the property with Mr. Brewer. During that walk, Mr. Parker allegedly told Mr. Brewer that the fence line erected by him marked the boundary line between the Sparkses' property and the Brewers' property.
In 1969, Guy Sparks had a survey conducted on his property. The result of that survey indicated that the old fence line did not mark the boundary line separating his property from the Brewers' property. In fact, that survey indicated that the boundary line was located north of the old fence line and at such a point that most of the Brewers' paved road was south of the line. Despite the result of that survey, neither Guy nor Walter Sparks attempted to exercise ownership of the additional property. On April 24, 1984, Glenn Byrd also conducted a survey on his property. That survey, like the prior survey by Guy Sparks, also indicated that the old fence line did not mark the boundary line separating his property from the Sparkses' properties; it further indicated that 85% to 90% of the Byrds' paved road was actually located on the Sparkses' properties. Despite the result of that survey, Mr. Byrd continued to treat the old fence line as the boundary line. In 1985, when Guy Sparks conducted brush burning next to the old fence line, Glenn Byrd approached Sparks and complained to him about apparent charring to wood in the fence. Guy Sparks responded to Byrd's complaints about the brush burning by asserting that he and his brother, Walter, owned the property where the old fence line was located, and most of Byrd's paved road.
On September 29, 1987, the plaintiffs filed a complaint in the Circuit Court of Lawrence County, requesting that the trial court establish the old fence line separating their properties from the defendants' properties as the legally accepted boundary line. After an ore tenus hearing, the trial court entered an order on December 30, 1988, establishing the old fence line as the boundary line. In that order, the trial *Page 214 
court found that the plaintiffs and their predecessors in title had claimed, occupied, and used openly and notoriously all the property down to the north side of the old fence line for more than 20 years.
 STANDARD OF REVIEW
The applicable standard for review in boundary line cases was stated in Francis v. Tucker, 341 So.2d 710, 711-12 (Ala. 1977), in which this Court stated the following:
 "It is an oft stated rule that a decree establishing a boundary line need not be supported by a preponderance of evidence. If, under any reasonable aspect of the case, the decree is supported by credible evidence, it is due to be affirmed unless palpably wrong or manifestly unjust."
Furthermore, this Court has consistently taken the position that a judgment establishing a boundary line between coterminous lands on evidence submitted ore tenus is presumed to be correct. See Cockrell v. Kelley, 428 So.2d 622
(Ala. 1983); Salter v. Cobb, 264 Ala. 609, 88 So.2d 845 (1956).
 ADVERSE POSSESSION BY PRESCRIPTION
In addressing the types of adverse possession presently recognized in Alabama, this Court stated the following:
 "In Alabama there are basically two types of adverse possession, these two types being statutory adverse possession and adverse possession by prescription. Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years. See, Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808 (1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. Code 1975, § 6-5-200. See, Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962)."
Kerlin v. Tensaw Land Timber Co.,. 390 So.2d 616, 618
(Ala. 1980). (Emphasis added.) In Alabama, the common-law doctrine of adverse possession by prescription acts as a rule of absolute repose, since a lapse of 20 years, during which time there has been continuous adverse possession, is considered a sufficient period for the recognition of rights based on adverse possession. In addressing the wisdom underlying the absolute presumption of title that arises through the operation of adverse possession by prescription, Justice Harwood stated:
 "The very term prescription is derived from 'Praescriptio' meaning a pre-scribing or former writing, and presupposes a lost grant. Further, the presumption rests not only on the supposition of a lost grant, but on the higher ground that it 'conduces to the peace of society, and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life, that the attainment of truth and justice is next to impossible,' Harrison et al. v. Heflin et al., 54 Ala. 552, and the presumption created by prescription precludes judicial inquiry in a title so acquired. Findlay v. Hardwick, 230 Ala. 197, 160 So. 336."
Lay v. Phillips, 276 Ala. 273, 277, 161 So.2d 477, 480 (1964). See also Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808
(1965); Howard v. Harrell, 275 Ala. 454, 156 So.2d 140 (1963);Morris v. Yancey, 267 Ala. 657, 104 So.2d 553 (1958).
A party claiming title to property through adverse possession by prescription must satisfy each of the following elements: 1) The party must actually possess the property, 2) the party's possession must be exclusive, 3) the party's possession must be open and notorious, 4) the party's possession must be hostile and under a claim of right, and 5) the party's possession must be continuous for a period of 20 years. See Daugherty v.Miller, 549 So.2d 65 (Ala. 1989); Hayden v. Robinson, *Page 215 472 So.2d 606 (Ala. 1985); Fitts v. Alexander, 277 Ala. 372,170 So.2d 808 (1965).
 ACTUAL POSSESSION
In addressing the element of "actual possession," this Court has stated that "[i]t is not necessary to physically reside upon the land to establish title by adverse possession."Hand v. Stanard, 392 So.2d 1157, 1160 (Ala. 1980). In fact, the "[l]and need only be used by an adverse possessor in a manner consistent with its nature and character — by such acts as would ordinarily be performed by the true owners of such land in such condition." Id. See Kubiszyn v. Bradley, 292 Ala. 570,298 So.2d 9 (1974); James v. Mizell, 289 Ala. 84, 265 So.2d 866
(1972); Moorer v. Malone, 248 Ala. 76, 26 So.2d 558 (1946). In this regard, the record reveals that the properties adjoining the old fence line are rural. Furthermore, the record reveals that the properties located on the north side of the old fence line have continuously been used for farming by the plaintiffs and their predecessors in title. As a consequence, we find that the plaintiffs and their predecessors in title have "actually possessed" the properties located on the north side of the old fence line.
 EXCLUSIVE POSSESSION
To fulfill the requirement of "exclusivity of possession," a party must assert possessory rights distinct from those of others. The rule is generally stated that " '[t]wo persons cannot hold the same property adversely to each other at the same time.' " Beason v. Bowlin, 274 Ala. 450, 454,149 So.2d 283, 286 (1962), quoting Stiff v. Cobb, 126 Ala. 381, 386,28 So. 402, 404 (1899). Exclusivity of possession "is generally demonstrated by acts that comport with ownership." Brown v.Alabama Great Southern R.R., 544 So.2d 926, 931 (Ala. 1989). These are "acts as would ordinarily be performed by the true owner in appropriating the land or its avails to his own use, and in preventing others from the use of it as far as reasonably practicable." Goodson v. Brothers, 111 Ala. 589,596, 20 So. 443, 445 (1896). The record reveals that the plaintiffs and their predecessors in title treated the property located on the north side of the old fence line as belonging to them. The paved road that runs next to and parallel with the old fence line has always been used by the plaintiffs and their predecessors in title. Nowhere does the record indicate that the defendants or their predecessors in title ever used or were ever permitted to use that same road. These facts indicate that the plaintiffs and their predecessors in title "exclusively possessed" the property located on the north side of the old fence.
 OPEN AND NOTORIOUS POSSESSION
Open and notorious possession is necessary so that a property owner may have an opportunity to learn of an adverse claim, and to protect his rights. In addressing this element of adverse possession, this Court made the following statement:
 " 'The doctrine of adverse possession rests upon the presumed acquiescence of the party against whom it is held, and such acquiescence again presumes knowledge. All the law requires, therefore, is that the possession, or rather the acts of dominion by which it is sought to be proved, shall be of such a character as may be reasonably expected to inform the true owner of the fact of possession and adverse claim of title.' Foulke v. Bond, 41 N.J.Law, 547; Farley v. Smith, 39 Ala. 44."
Lawrence v. Alabama State Land Co., 144 Ala. 524, 529,41 So. 612, 614 (1905). (Emphasis added.) Evidence establishing actual possession will also be sufficient to establish "open and notorious possession." See Turnham v. Potter, 289 Ala. 685,271 So.2d 246 (1972); Alabama State Land Co. v. Matthews, 168 Ala. 200,53 So. 174 (1910). As earlier noted, the plaintiffs and their predecessors in title have persistently used the property located on the north side of the old fence as farm land, in a manner that is consistent with the property's rural nature and character; consequently, such use of said property by the plaintiffs and their predecessors in title openly and notoriously notified the defendants and their *Page 216 
predecessors in title of the adverse claims to it.
 HOSTILE POSSESSION AND CLAIM OF RIGHT
The requirement that possession be "hostile and under a claim of right" before a party can acquire title through adverse possession is imposed so that the property owner will not be lulled into a false sense of security and thereby be induced to refrain from asserting his right to the property by entry or legal action.[2] This Court has held that a permissive occupant of property cannot acquire title to property through adverse possession. See Stewart v. Childress, 269 Ala. 87, 111 So.2d 8
(1959). In speaking to the issue of "hostile possession," this Court has consistently taken the view that it is immaterial whether an adverse possessor would have claimed the property had he known of his mistaken claim to it, for it is the adverse possessor's intent to assert dominion over the property that causes his possession to be deemed "hostile." See Reynolds v.Rutland, 365 So.2d 656 (Ala. 1978); Guy v. Lancaster, 250 Ala. 287, 34 So.2d 499 (1948); Whitlow v. Moore, 246 Ala. 472,21 So.2d 253 (1945). Furthermore, in addressing the other issue of "claim of right," this Court stated the following:
 "Possession, to be adverse, must be held under a claim of right, and there can be no adverse possession without an intention to claim title. Hence it is essential to the proper determination of the character of the possession to consider the intention with which it was taken and held. If one occupies land up to a certain fence, because he believes that to be the line of his land, but not having any intention to claim up to the fence, if it should be beyond the line, the intent to claim title does not exist coincident with the possession, and the possession up to the fence is not, therefore, adverse."
Hess v. Rudder, 117 Ala. 525, 528, 23 So. 136 (1898). (Emphasis added.) See Tanner v. Dobbins, 255 Ala. 671, 53 So.2d 549
(1951).
The record reveals that the plaintiffs and their predecessors in title have consistently possessed the property located on the north side of the old fence line with the intention of claiming it as their own. None of the testimony contained in the record reveals a contrary position. Therefore, this Court finds that the plaintiffs and their predecessors in title did possess the property located on the north side of the old fence line in a hostile fashion and under a claim of right.
 CONTINUOUS POSSESSION
Under the common-law doctrine of adverse possession by prescription, an adverse possessor must continually possess property for a period of 20 years without the recognition of adverse rights to it by others. See Morris v. Yancey, 267 Ala. 657, 104 So.2d 553 (1958); Walker v. Coley, 264 Ala. 492,88 So.2d 868 (1956). This Court has stated that an adverse claimant to property can "tack" his period of possession onto that of a prior adverse claimant in order to establish a continuous stream of adverse possession for the required time span. The only prerequisite for tacking is privity of estate between the adverse claimants, which can be established by a transfer of title or possession. See Moore v. Johnson,471 So.2d 1250 (Ala. 1985); Bussey v. Bussey, 403 So.2d 907
(Ala. 1981); Mardis v. Nichols, 393 So.2d 976 (Ala. 1981);Carpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975); Grahamv. Hawkins, 281 Ala. 288, 202 So.2d 74 (1967). The record clearly reveals that the plaintiffs have "continuously possessed" the property located on the north side of the old fence line for more than 20 years through "tacking" their adverse possession onto that of their predecessors in title as to that property. Also, the record reveals that for 33 years neither the defendants nor their predecessors in title ever disputed that the old fence line that separated their properties was the true boundary line.[3] In *Page 217 
fact, when Guy Sparks had a survey conducted on his property in 1969 that indicated that the old fence line did not mark the boundary line, neither he nor his brother, Walter Sparks, attempted to exercise ownership of any property north of the fence, either by entry or by legal action.
Therefore, the trial court's order establishing the old fence line as the boundary line separating the respective properties of the plaintiffs and the defendants is correct. Accordingly, the judgment appealed from is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS and KENNEDY, JJ., concur.
STEAGALL, J., concurs in the result.
[1] As part of a divorce settlement, Mildred Brewer had conveyed her interest in the property to Earl Brewer on August 17, 1971; thereafter, Mr. Brewer owned the entire property located on the north side of the old fence line.
[2] See H. Tiffany, The Law of Real Property § 1142, at 743 (3rd ed. 1975).
[3] The 33-year figure results from calculating the period between December 7, 1935, the date that the Parkers conveyed their property located on the south side of the old fence line to the Sivleys, and September 10, 1969, the date listed on Gay Spark's survey of his property.