PER CURIAM.
Marlin McKinney and Donna McKinney, the defendants below, filed this petition for a writ of mandamus seeking an order directing the Elmore Circuit Court to dismiss the ejectment and unlawful-detainer claims of Gilberto Sanchez, the respondent here and the plaintiff below, and to grant the McKinneys’ motion to vacate the trial court’s pretrial order on the ground that Sanchez lacked standing. The McKinneys further seek the return of moneys paid by them to Sanchez pursuant to the allegedly void pretrial order. We grant the petition and issue the writ.

Facts and Procedural History

This case arises from a complex factual scenario contrived by the parties in an attempt to circumvent Alabama’s home-builders licensure statute. See § 34-14A-1 et seq., Aa.Code 1975. According to their petition, on January 15, 2005, the McKinneys entered into an oral contract with Sanchez relating to the purchase by Sanchez of a parcel of real property located in Elmore County. Sanchez, an unlicensed contractor, was to construct a residence on the property for the McKinneys. Aso according to the petition, on or around April 21, 2005, Sanchez, the McKinneys’ former long-term personal physician, purchased property located in Titus on behalf of the McKinneys, who had selected that particular parcel of property as the site for the planned construction of *504 a primary residence. In October 2005, pending completion of their planned primary residence on the parcel purchased by Sanchez, the McKinneys “took possession” of the property when they moved into a guest house that had been constructed on the property.
On March 1, 2006, the parties entered into a real-estate-sales agreement pursuant to which Sanchez agreed to sell the McKinneys the Titus property for a purchase price of $168,000. The agreement reflected that the McKinneys had previously paid $32,000 of the contract price and that the remaining balance of $186,000 was due at closing, which, the contract specified, was to occur within three weeks of the execution date of the agreement.[1] The transaction was never completed, and the closing never occurred. The McKin-neys contend that the planned closing never occurred because, they allege, Sanchez discontinued construction of the residence and has refused to resume construction because he has been unable to obtain a higher purchase price for the property from the McKinneys. They further assert that, as a result of Sanchez’s alleged lack of skill and knowledge of homebuilding, “approximately one-half of the main residence had to be demolished and rebuilt by a competent construction company.” (Petition, at p. 3.)
Sanchez’s brief in response to the McKinneys’ petition does indicate that he purchased the property and that he subsequently entered into a real-estate-sales agreement with the McKinneys pursuant to which the McKinneys would purchase the property from him. Sanchez, however, contends that there is nothing to indicate that the McKinneys ever fulfilled the terms of that agreement. In fact, Sanchez identifies in his brief a second real-estate-sales agreement, which he says the parties executed on June 14, 2006, and which was contingent upon, as was the first agreement, the McKinneys’ obtaining the necessary financing to cover the purchase price, which had been raised to $220,000, and upon closing “as soon as possible.” Sanchez maintains that there is also nothing in the materials before us to indicate that the second scheduled closing ever occurred. In fact, he contends that the McKinneys failed to close on either real-estate-sales agreement.
Both sides acknowledge that, in July 2007, Sanchez executed a $268,000 note secured by a mortgage on the property in favor of Regions Bank d/b/a Regions Mortgage (“Regions”). Thereafter, on September 14, 2007, Sanchez and the McKinneys entered in a bond-for-title[2] agreement whereby Sanchez once again agreed to sell the property to the McKinneys — this time for a purchase price of $240,000.[3] Accord *505 ing to Sanchez, at the time of this third agreement, he disclosed to the McKinneys “that the property was or [might] be subject to a mortgage.” (Sanchez’s response, at p. 3.) In fact, the bond-for-title agreement specifically provided that the McKin-neys, as purchasers, granted Sanchez “the express authority to mortgage, finance, etc. the property subject hereto in any amount not exceeding $300,000.00.” The bond-for-title agreement also stated that it was not to be recorded and that, if a mortgage holder were to become aware of Sanchez’s agreement with the McKinneys and, as a result, any mortgage balance was accelerated, the McKinneys would be liable for the outstanding mortgage indebtedness.
With regard to the McKinneys’ interest in the property, the bond-for-title agreement states, in part, as follows:
“[The McKinneys] understand[] that in the event that [the McKinneys] do[ ] not comply with the provisions in this Bond for Title, [Sanchez] has the option to declare [the McKinneys] in violation of this Bond for Title and, in such case, any right [the McKinneys] may have under this Bond for Title will terminate and end.
“The parties hereto agree and understand that the execution of this agreement and the performance of the provisions herein by the respective parties does not create in the [McKinneys] any legal or beneficial interest in the property and [the McKinneys] shall not have any such interest until a deed is executed by [Sanchez] or [Sanchez’s] assigns and is delivered to [the McKinneys].”
The bond-for-title agreement also specifically provides that, if the McKinneys fail to timely pay any of the installment payments due under the bond for title or to comply with any other term of that agreement,
“[Sanchez] shall have the right to annul [the] agreement, and ... the [McKin-neys] shall then become the tenant[s] of [Sanchez], and [Sanchez] shall be entitled to the immediate possession of said property described herein, and may take possession thereof, and may eject the [McKinneys] by an action of unlawful detainer or any other legal proceeding, and shall retain all the monies paid under this agreement by the [McKinneys] as rent of the premises.... ”
On September 1, 2009, Sanchez commenced the underlying action in the El-more Circuit Court alleging a claim of unlawful detainer and seeking ejectment. In his complaint, Sanchez contended that the McKinneys had defaulted under the payment terms of the bond-for-title agreement; that they were in arrears in the amount of $42,264.72; and that Sanchez had terminated the McKinneys’ right to possession by written notice. The McKin-neys answered, asserting numerous affirmative defenses and also asserting that Sanchez lacked standing. Additionally, the McKinneys asserted counterclaims alleging breach of contract, unjust enrichment, fraud, negligence or wantonness, breach of fiduciary duty, and abuse of a confidential relationship and seeking specific performance.[4]
On November 18, 2009, following a hearing regarding Sanchez’s emergency motion to determine the McKinneys’ right to con *506 tinued possession of the property, the trial court entered an order allowing the McKinneys to remain in possession of the property but ordering that they make the monthly mortgage payments on Sanchez’s mortgage in the amount of $2,616.45. Specifically, the trial court ordered that the McKinneys were to make mortgage payments for the following months: November 2009, December 2009, January 2010, and February 2010. The trial court’s order scheduled trial for February 18, 2010.
On January 7, 2010, Sanchez’s counsel moved that the trial setting be continued, alleging scheduling conflicts and the need for additional discovery/preparation. The trial court rescheduled the trial for April 2010. On March 1, 2010, Sanchez filed a motion seeking to extend the trial court’s November 2009 order, in which he asserted that the McKinneys remained in possession of the property and requested that the trial court order the McKinneys to continue making the monthly mortgage payments on the property until the rescheduled trial date in April 2010. In their response, the McKinneys argued, among other things, that “principles of equity” required that Sanchez’s request be denied because the trial date was continued at his sole request and because Sanchez was not using the remitted moneys to satisfy the monthly mortgage payments. The McKinneys further argued that the original pretrial order in which they were first ordered to make the mortgage payments was void for want of subject-matter jurisdiction and thus could not be extended.
On March 2, 2010, the trial court entered an order requiring the McKinneys “to continue satisfying the $2,616.45 monthly mortgage payment on the subject property pending further Order of [the] Court.” On that same date, the McKin-neys filed their first motion seeking to dismiss Sanchez’s action based on a lack of subject-matter jurisdiction. Thereafter, the McKinneys filed both an emergency motion to stay and a separate motion requesting that the trial court vacate its March 2, 2010, order. Specifically, in their motion to vacate, the McKinneys noted that, in his motion seeking a continuance, Sanchez failed to request that the trial court extend its previous pretrial order requiring that the McKinneys make the mortgage payments. The trial court denied the motion to vacate; however, nothing in the materials before us suggests that the trial court ever ruled on the McKinneys’ dismissal motion.
On March 30, 2010, the McKinneys filed a second motion requesting that the trial court dismiss Sanchez’s ejectment and unlawful-detainer claims. In their renewed motion and accompanying brief, the McKinneys again argued that, because Sanchez purportedly lacked standing, the trial court lacked subject-matter jurisdiction over those claims. The McKinneys’ assertions regarding Sanchez’s alleged lack of standing were based on the McKin-neys’ contentions that Sanchez did not hold either legal or equitable title to the subject property, which, under Alabama law, is required to pursue an ejectment action, or have the necessary possessory interest in the property to maintain an action for unlawful detainer. As a final matter, the McKinneys argued that the district court, not the circuit court, was vested with original jurisdiction of all actions asserting an unlawful-detainer claim. According to the case-action summary, the trial court has taken “no action” on the McKinneys’ renewed motion to dismiss.
The McKinneys subsequently filed this petition for a writ of mandamus,[5] and this *507 Court entered an order staying all proceedings in the Elmore Circuit Court pending our disposition of the petition.

Standard of Review

“A writ of mandamus is an extraordinary remedy, and is appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.”
Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001).

Discussion

I.
The substantive question presented by the McKinneys’ petition is whether the trial court lacks subject-matter jurisdiction over Sanchez’s complaint seeking ejectment and asserting an unlawful-detainer claim. Specifically, the McKinneys contend that Sanchez lacked the necessary standing to commence the action seeking ejectment, thereby depriving the trial court of subject-matter jurisdiction. They further argue that original jurisdiction of an action claiming unlawful detainer lies in district court and not in the circuit court.
Initially, we note that Sanchez’s abbreviated complaint does not set out individual counts asserting separate ejectment and unlawful-detainer claims,[6] and, because of our resolution of this matter, we do not pass on the potential merits of either purported claim. Instead, we conclude, for the reasons discussed below, that the trial court erred in refusing to dismiss the action.
A. Ejectment Action
The McKinneys initially argue that Sanchez does not own legal title to the subject property and is not in possession of the property. Either title or possession, they contend, is essential to possess the requisite standing to maintain an ejectment action. They further argue that, as a result of Sanchez’s mortgage of the property to Regions, Sanchez is the holder of equitable title to the property while Regions holds legal title and that Regions is, thus, the sole party capable of pursuing a claim for ejectment. In support of this claim, the McKinneys cite Shannon v. Long, 180 Ala. 128, 60 So. 273 (1912), in which this Court stated: “When the holder of an equitable title, only, to land, is out of possession, he cannot maintain an action of ejectment to oust the actual possessor of the land.... ” 180 Ala. at 135, 60 So. at 276.
In his answer in opposition to the McKinneys’ petition, and as evidence that he possesses the requisite standing to pursue the underlying civil action, Sanchez relies on the April 21, 2005, deed transferring title of the subject property to him and on the real-estate mortgage, which he executed on the subject property in favor of Regions. Sanchez also responds by citing the circuit court’s jurisdictional requirements pertaining to the amount in controversy in civil actions. See § 12-11-30(1). Sanchez further cites the two real-estate-sales agreements mentioned above and contends that, as a result of the subse *508 quent bond-for-title agreement, his complaint is governed by the Alabama Uniform Residential Landlord and Tenant Act. See § 35-9A-101 et seq., Ala.Code 1975.
It is well established that,
“[i]n order to maintain an action for ejectment, a plaintiff must allege either possession or legal title, and the ‘action must be commenced in the name of the real owner of the land or in the name of the person entitled to possession thereof. ..§ 6-6-280, Ala.Code 1975; see Morris v. Yancey, 267 Ala. 657, 659, 104 So.2d 553, 555 (1958) (‘to authorize the recovery by the plaintiff, it must be made to appear by the evidence that plaintiff, at the commencement of the suit, had the legal title to the land sued for’); Douglass v. Jones, 628 So.2d 940, 941 (Ala.Civ.App.1993) (beneficiary of will lacked standing to maintain ejectment because title of property remained with estate).”
Cadle Co. v. Shabani, 950 So.2d 277, 279 (Ala.2006) (emphasis added). See also McCary v. Crumpton, 267 Ala. 484, 487, 103 So.2d 714, 716 (1958) (“[T]he plaintiff, to recover in ejectment, must have title when he files his suit, and also at the time of trial....”).
Sanchez does not allege in his ejectment complaint that he holds title to the subject property or that he is in actual possession of the property. See § 6-6-280, Ala.Code 1975 (“[T]he complaint [in an ejectment action] is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto ... and that the defendant entered thereupon and unlawfully withholds and detains the same.”); Atlas Subsidiaries of Fla., Inc. v. Kornegay, 288 Ala. 599, 601, 264 So.2d 158, 161 (1972) (noting that a statutory action in the nature of ejectment exists under two alternatives: “The first such alternative is where the complaint alleges that the plaintiff was possessed of the premises and the defendant entered thereupon and unlawfully withholds and detains the same. The other alternative is where the complaint alleges that the plaintiff has the legal title to the lands and the defendant entered thereupon and unlawfully withholds and detains the same”). Instead, in that pleading, Sanchez merely “demands the right to possession from the [McKinneys].” Although the deed attached to Sanchez’s brief does, in fact, indicate that Sanchez holds record title to the property, the property is indisputably subject to a mortgage in favor of Regions. Such mortgage deprives Sanchez of legal title to the property.
“This Court generally defined the property interests created by a mortgage in Trauner v. Lowrey, 369 So.2d 531, 534 (Ala.1979), stating: ‘Alabama classifies itself as a “title” state with regard to mortgages. Execution of a mortgage passes legal title to the mortgagee.’ See Foster v. Hudson, 437 So.2d 528 (Ala.1983); First Nat’l Bank of Mobile v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala.1981); Jones v. Butler, 286 Ala. 69, 237 So.2d 460 (1970); McCary v. Crumpton, 267 Ala. 484, 103 So.2d 714 (1958); Garst v. Johnson, 251 Ala. 291, 37 So.2d 183 (1948); and Mallory v. Agee, 226 Ala. 596, 147 So. 881 (1932). See also § 35-10-26, Ala.Code 1975.”
Bolte v. Robertson, 941 So.2d 920, 925 (Ala.2006). See also Jones v. Butler, 286 Ala. 69, 71, 237 So.2d 460, 462 (1970) (“The execution and delivery by appellee of her note and mortgage to Burchwell & Company conveyed to said mortgagee appellee’s legal title to the property subject to the conditions of said mortgage.”); McCary, 267 Ala. at 487, 103 So.2d at 716 (“A mortgage on real estate passes to the *509 mortgagee a fee-simple title, unless otherwise expressly limited”).
By executing a mortgage on the subject property, Sanchez, the mortgagor, conveyed legal title to Regions, the mortgagee. Because the loan had not been repaid in full at the time this petition was filed, Regions retained the right, title, and interest to the property. See § 35-10-26, Ala. Code 1975 (stating both that “[t]he payment or satisfaction of the real property mortgage debt divests the title passing by the mortgage” and that “ ‘[pjayment or satisfaction of the real property mortgage debt’ shall not occur until there is no outstanding indebtedness”). We further note that it is undisputed that, following their move onto the subject property in October 2005, the McKinneys have remained in possession of the property. In fact, as the McKinneys note in their petition, there is nothing to suggest that Sanchez has ever actually physically possessed the property in any respect. Because Sanchez is unable to demonstrate that, at the time he filed the underlying ejectment action, he had either legal title to or actual possession of the subject property, under the authority of Cadle he lacks the standing necessary to prosecute his ejectment claim.[7]
B. Unlawful-Detainer Claim
With regard to the unlawful-detain-er claim asserted by Sanchez, as set out above, the McKinneys argue in their petition that original jurisdiction over an unlawful-detainer action lies exclusively in the district court of the county in which the property lies.
“By statute, original jurisdiction over unlawful-detainer actions lies in the district courts. § 6-6-330, Ala.Code 1975 (‘The forcible entry upon and detainer, or the unlawful detainer, of lands, tenements and hereditaments is cognizable before the district court of the county in which the offense is committed.’). A circuit court may not exercise jurisdiction over an unlawful-detainer action until the district court has adjudicated the unlawful-detainer action and one of the parties has appealed to the circuit court. See § 6-6-350, Ala. Code 1975 (‘Any party may appeal from a judgment entered against him or her [in an unlawful-de-tainer action] by a district court to the circuit court at any time within seven *510 days after the entry thereof, and [the] appeal and the proceedings thereon shall in all respects, except as provided in this article, be governed by this code relating to appeal from district courts.’).”
Darby v. Schley, 8 So.3d 1011, 1013 (Ala.Civ.App.2008).
The limited materials before us indicate that Sanchez initiated the underlying civil action in the Elmore Circuit Court. There is nothing in the case-action summary indicating that the Elmore District Court had previously adjudicated Sanchez’s unlawful-detainer claim or that Sanchez’s filing in the circuit court represented the permitted appeal from such an adjudication. Further, there is no challenge to the correctness of Darby, and the trial court had no discretion in the instant case not to comply with its dictates. Therefore, because the Elmore District Court had not adjudicated Sanchez’s unlawful-detainer claim, the El-more Circuit Court lacked jurisdiction over that claim, and any purported order it entered in the underlying unlawful-detain-er action is void. Id.
II.
The McKinneys further assert in their petition that, because the trial court lacked subject-matter jurisdiction, it is incapable of enforcing its pretrial order requiring the McKinneys to continue making Sanchez’s mortgage payments and that the payments they have made pursuant to that order must be returned.
“Standing is ‘ “ ‘[t]he requisite personal interest that must exist at the commencement of the litigation.’ ” ’ Pharmacia Corp. v. Suggs, 932 So.2d 95, 98 (Ala.2005) (quoting In re Allison G., 276 Conn. 146, 156, 883 A.2d 1226, 1231 (2005), quoting in turn H. Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). ‘When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.’ State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999)....
“When the absence of subject-matter jurisdiction is noticed by, or pointed out to, the trial court, that court has no jurisdiction to entertain further motions or pleadings in the case. It can do nothing but dismiss the action forthwith. ‘ “Any other action taken by a court lacking subject matter jurisdiction is null and void.’” Rainbow Drive, 740 So.2d at 1029 (quoting Beach v. Director of Revenue, 934 S.W.2d 315, 318 (Mo.Ct.App.1996)).”
Cadle Co., 4 So.3d at 462-63. See also Crutcher v. Williams, 12 So.3d 631, 635 (Ala.2008) (“A court is obligated to vigilantly protect against deciding cases over which it has no jurisdiction....”). According to the precedents cited by the McKinneys, Sanchez lacked possession of, or legal title to, the subject property; he had no standing to pursue the ejectment action; and the trial court had no subject-matter jurisdiction. See State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1029 (Ala.1999) (“Because the City had no standing, the trial court had no subject-matter jurisdiction, and, consequently, no alternative but to dismiss the action. See Beach v. Director of Revenue, 934 S.W.2d 315, 318 (Mo.Ct.App.1996) (‘Lacking subject matter jurisdiction [a court] may take no action other than to exercise its power to dismiss the action.... Any other action taken by a court lacking subject matter jurisdiction is null and void.’).”). Thus, all actions taken and every order entered in this matter are void, and the trial court must dismiss Sanchez’s action and the McKinneys’ counterclaims. 2018 Rainbow Drive, supra.
*511 Finally, the McKinneys cite no authority showing that the trial court — which lacks subject-matter jurisdiction — has the power to order the return of the payments; therefore, the McKinneys have not met their burden of establishing a clear legal right to that particular relief, and we deny their petition in that respect.

Conclusion

We grant the McKinneys’ petition in part and direct the trial court to dismiss the action.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
WOODALL, STUART, PARKER, MAIN, and WISE, JJ., concur.
SHAW and BOLIN, JJ., concur specially.
COBB, C.J., concurs in part and dissents in part.
MURDOCK, J., dissents.

. Another paragraph in the real-estate-sales agreement specified that the transaction was to be closed within 30 days of the execution of the agreement unless extended by separate agreement.

. " 'A bond for title is a conditional contract for the sale of land whereby the vendor covenants to make title to the vendee upon payment of the purchase price.’ J. Thaddeus Salmon, Comment, Bonds for Title in Alabama, 3 Ala.L.Rev. 327, 327 (1951). A bond for title is an executory contract for the sale of land which creates an equitable mortgage on the land. Id. at 328.”
Hicks v. Dunn, 622 So.2d 914, 915 n. 1 (Ala. 1993).

.The McKinneys in their petition maintain that the purported signature of Donna McKinney on the bond-for-title agreement is an obvious forgery despite an accompanying notary acknowledgment. The McKinneys also contend that, as a result of his incapacity from grief and medication taken in an attempt to cope with the murder of the McKinneys' daughter in June 2007, Marlin McKinney has *505 no recollection of either seeing or signing the bond-for-title agreement.

. The McKinneys’ counterclaim also includes a claim of respondeat superior related to the notarization of the alleged forged signature of Donna McKinney on the bond-for-title agreement by Farley Pugh, allegedly an employee of Sanchez’s. See supra note 3.

. See Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala.2000) ("[A] lack of subject-mat *507 ter jurisdiction may be raised at any time, and ... the question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.”).

. "Ejectment may be maintained on proof of title carrying, as an element of ownership, a right to possession and enjoyment. Unlawful detainer is a penal action, summary in character, specifically designed to oust a hold-over tenant.” Lane v. Henderson, 232 Ala. 122, 124, 167 So. 270, 271 (1936).

. Sanchez does not argue that Cadle was wrongly decided or that it is due to be overruled. We have previously recognized that our appellate courts were occasionally guilty of " 'blurrpng]' ” the lines between the distinct concepts of standing and real party in interest. Ex parte Sterilite Corp. of Alabama, 837 So.2d 815, 819 (Ala.2002) (quoting Battle v. Alpha Chem. & Paper Co., 770 So.2d 626, 634 (Ala.Civ.App.2000), citing in turn Cooks v. Jim Walter Homes, Inc., 695 So.2d 19 (Ala.Civ.App.1996), overruled by Ex parte Moore, 793 So.2d 762 (Ala.2000)). See also Hamm v. Norfolk Southern Ry., 52 So.3d 484, 499 (Ala.2010) (Lyons, J., concurring specially) ("condemn[ing] loose usage of the term 'standing’ " where the issue should be whether the action is being prosecuted by the real party in interest). However, this Court has long recognized a disinclination to overrule existing caselaw in the absence of either a specific request to do so or an adequate argument asking that we do so. Clay Kilgore Constr., Inc. v. Buchalter/Grant, L.L.C., 949 So.2d 893, 898 (Ala.2006) (noting the absence of a specific request by the appellant to overrule existing authority and stating that, "[e]ven if we would be amenable to such a request, we are not inclined to abandon precedent without a specific invitation to do so”). Although our cases indicate that we may, ex mero motu, address "jurisdictional issues,” see, e.g., Crutcher v. Williams, 12 So.3d 631, 635 (Ala.2008), we generally do so in cases involving the lack of subject-matter jurisdiction. Id. See also Blevins v. Hillwood Office Ctr. Owners’ Ass'n, 51 So.3d 317, 322 (Ala.2010) (holding that "just because the Court is duty bound to notice the absence of subject-matter jurisdiction, it does not follow that it is so bound to construct theories and search the record for facts to support the existence of jurisdiction for plaintiffs who choose to stand mute in the face of a serious jurisdictional challenge”).