CRAWLEY, Presiding Judge.
This appeal involves a dispute over hunting rights on a 35-acre tract of land in Clarke County (“the property”). The property was purchased in 1951 by Charlie Collins, Sr., and Corean Collins, who were husband and wife (“the Collinses”). The eight appellants — Wilmer Collins, Edna Collins, Charlie Collins, Jr., Leona B. Collins, Gladys Bush, Estee Thomas, Corean Thomas, and Velma Rocker — are five siblings who are the children of the Collinses and the spouses of three of the siblings. They are the fee-simple owners of the property (the appellants are hereinafter collectively referred to as “the fee owners”).
On June 21,1962, the Collinses conveyed the property by statutory warranty deed to Edward W. Hora and Barbara B. Hora for the stated consideration of $1,497. Three years later, on July 16, 1965, the Horas reconveyed the property by statutory warranty deed to the Collinses for the consideration of $1,667.52; however, the Horas reserved to themselves the exclusive hunting rights to the property. In 1967, the Horas conveyed the hunting rights to the property to Griffin. The appellees, Joe Overstreet and Elwood Overstreet (“the Overstreets”), base their claims to the exclusive hunting rights to the property on a series of conveyances from Griffin to Bowling, from Bowling to Chastain, and, on August 9, 1999, from Chastain to the Overstreets. All of the conveyances were duly recorded.
On November 29, 1999, the fee owners sued Chastain, seeking a judgment declaring that the reservation of the hunting rights to the property by Chastain’s predecessors in title was invalid, seeking to quiet title to the hunting rights on the property, and demanding damages for trespass. The fee owners amended the complaint to name the Overstreets as additional defendants when they ascertained that Chastain had deeded his rights to the Overstreets.[1] After a bench trial on April *104 19, 2005, the trial court entered a judgment in favor of the Overstreets on October 5, 2005. The fee owners appealed to the Alabama Supreme Court; the supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), AJa.Code 1975.
I.
The fee owners argue that the Horas’ reservation of the exclusive hunting rights to the property was invalid. They claim that the 1962 deed from the Collins-es to the Horas was an equitable mortgage that secured a preexisting debt. The fee owners maintain that the Collinses paid the debt before the Horas reconveyed the property to the Collinses in 1965, and, they say, payment of the debt automatically divested the Horas of title pursuant to § 35-10-26, Ala.Code 1975,[2] and Cottingham v. Citizens Bank, 859 So.2d 414, 419 (Ala.2003) (stating that “under Alabama law, ‘[pjayment of the mortgage debt before foreclosure divests the title of the mortgagee.’ ” (quoting Crabtree v. Price, 212 Ala. 387, 388, 102 So. 605, 606 (1924))). Therefore, the fee owners argue, the Horas’ reservation of hunting rights in the 1965 deed was void.
“Whether a transaction is to be considered as an absolute sale with right to repurchase or a mortgage depends upon the intention of the parties, to be ascertained by the circumstances attending the transaction. The intention may be collected from the extrinsic circumstances and the internal evidence afforded by the papers. The subsequent conduct of the parties may be considered.
“Every case, of necessity, depends in a great measure upon its peculiar facts and circumstances. For there are, in most cases of this character, no tests which will enable a court to determine with anything like positive certainty whether a mortgage or a conditional sale was intended.
“There are some facts which are regarded of controlling importance in determining the question. Did the relation of debtor and creditor exist before and at the time of the transaction? Or, if not, did the transaction commence in a negotiation for a loan of money? Was there great disparity between the value of the property and the consideration paid for it? Is there a debt continuing for the payment of which the vendor is liable?
“If any of these facts are found to exist in a doubtful case, it will go far to show a mortgage was intended. If all of them are found concurring, the transaction will be regarded as a mortgage rather than a conditional sale, unless the purchaser, by clear and convincing evidence, removes the presumption arising from them.
[[Image here]]
“In Reeves v. Abercrombie, [108 Ala. 535, 540, 19 So. 41, 42 (1895)], it was said:
*105 “ ‘It is helpful to ascertain whether the transaction began in an application for the loan of money; was there great disparity between the value of the property and the consideration of the conveyance; whether the grantor retained possession, paid taxes, made improvements a tenant would not probably make, or otherwise, with the knowledge and consent of the grantee, acted towards the property in a way an owner would naturally do when his property was incumbered. The conduct of the parties under, and with reference to, any agreement made by them, throws a strong light upon their understanding of its scope and purpose; and, upon this idea, the inquiries above suggested would naturally arise in the mind of the searcher after truth, who, in the midst of conflicting statements, would probably give more heed to the actions of the parties than to their words.’ ”
Cousins v. Crawford, 258 Ala. 590, 599-600, 63 So.2d 670, 677-79 (Ala.1953)(em-phasis and citations omitted). One who alleges that a conveyance, absolute on its face, was intended by the grantor and the grantee to be a mortgage has the burden of proving the allegations by clear and convincing evidence. Brannon v. McCormick, 211 Ala. 546, 101 So. 56 (1924).
In support of their equitable-mortgage theory, the fee owners presented evidence indicating that the Collinses and the Horas were friends and that the Collinses had allowed the Horas to hunt on the property. The fee owners also presented documentary evidence consisting of deeds and mortgages from which, they say, the following facts can be inferred: The Col-linses needed money to satisfy two mortgages on the property — one to Delaney and one to Benson and Sinclair — so they conveyed the property to the Horas in 1962 as security for a loan of $1,497 from the Horas. After the conveyance, the Horas paid the property taxes and the Collinses continued to live on the property. The Collinses paid off the mortgages to Delaney and to Benson and Sinclair. On June 25, 1965, the Collinses then executed a promissory note to Merchant’s Bank of Jackson, Alabama, and secured the note with a mortgage on the property. Three weeks later, on July 16, 1965, the Horas voluntarily reconveyed the property to the Collinses for the consideration of $1,667.52 — only $170.52 more than the consideration recited in the 1962 deed from the Collinses to the Horas — an amount, the fee owners contend, that would approximate the interest on the $1,497 “loan” plus property taxes and recording fees for the deed.
The trial court entered the following judgment:
“1. That [the Overstreets] own the exclusive hunting rights on the property at issue by purchase of said hunting rights for valuable consideration and granted by deed....
“2. That [the fee owners’] theories of recovery based on a defect in the initial severance of the hunting rights from the real property by deed dated July 16, 1965, are barred by the Doctrine of Laches.
“3. That [the fee owners’] theories of recovery based on equitable mortgage and adverse possession are not supported by the evidence in this case.
“4. That judgment is hereby rendered for [the Overstreets] and against [the fee owners] as to all causes of action set forth in the complaint and any amendments thereto.”
There was no direct evidence of any agreement between the Collinses and the Horas. We need not decide whether the trial court was presented with evidence from which it *106 might have inferred that the Collinses and the Horas intended a mortgage rather than an absolute conveyance in 1962, because, even assuming that the Collinses and the Horas had intended a mortgage, there was no evidence indicating that the debt secured by the mortgage was paid before the Horas reconveyed the property to the Collinses in 1965.
In support of their argument that the debt secured by what the fee owners claim was an equitable mortgage was paid before the 1965 reconveyance, the fee owners point to the language of the 1965 reconveyance itself. The deed reconveying the property states, in pertinent part:
“Know all men by these presents, that for and in consideration of the sum of one thousand six hundred sixty seven and 52/100ths ($1,667.52) dollars cash in hand paid to the undersigned [grantors, i.e., the Horas], by Charlie Collins and [Corean] Collins, husband and wife, the receipt of which is hereby acknowledged, we, the undersigned grantors, Edward W. Hora and Barbara Barthes Hora, husband and wife, have this day bargained and sold, and by these presents do hereby grant, bargain, sell and convey, subject to reservations and restrictions mentioned herein, unto Charlie Collins and [Corean] Collins, husband and wife, during their joint lives and upon the death of either of them, then to the survivor of them in fee simple, together with every contingent remainder and right of reversion, the following described property situated in Clarke County, Alabama, to wit:
“NE 1/4 of NW 1/4 except 5 acres in South West Corner, Section 4 Township 4 North Range 2 East, containing 35 acres more or less.
“The aforesaid conveyance is made subject to the following reservation which the grantors have reserved unto themselves:
“1 — The grantors do hereby reserve the exclusive hunting rights to said property.”
(Emphasis added.)
The fee owners argue that the emphasized portion of the first sentence of the deed reconveying the property acknowledged that the Horas had “already received $1,667.52 from the Collinses before the Horas signed the reconveyance.” Therefore, they argue, the payment of the debt operated to divest title from the Horas at the instant the mortgage was satisfied and, consequently, they say, the Horas had no ownership interest from which they could have reserved hunting rights to the property.
We cannot accept the fee owners’ argument that the language in the deed of reconveyance suggests that the Collinses were indebted to the Horas in the amount of $1,667.52 and that the debt was paid before the Horas reconveyed the property. Instead, the recitals of the deed indicate that the payment of $1,667.52 was the consideration for the reconveyance of the property. The payment and the transfer of property “must be regarded as simultaneous acts, the former being a consideration for the latter.” Hanrick v. Andrews, 9 Port. 9, 34 (Ala.1839) (emphasis added).
H.
The fee owners maintain that there is an inconsistency or repugnancy between the granting clause of the July 16, 1965, reconveyance deed — with its warranty for quiet enjoyment by the Collinses — and the later reservation by the Horas in the same deed of the exclusive hunting rights to the property.
“The right to hunt upon the land of another is a profit á prendre. Jones v. Davis, 477 So.2d 285 (Ala.1985). See *107 also Thompson on Real Property, §§ 135 to 140 (1980). The ‘profit á prendre,’ which derives its name from the French, means ‘profits to take,’ the phrase ‘from land’ being implied. A profit á prendre is a right exercised by one man in the soil of another, accompanied with participation in the profits of the soil, or a right to take a part of the soil or of the produce of the land. Thompson on Real Property, § 139 (1980).”
Reeves v. Alabama Land Locators, Inc., 514 So.2d 917, 918 (Ala.1987).
“ ‘[A profit á prendre] gives only a right of access to land for the purpose of removing the designated substance and leaves the landowner’s general right of possession undisturbed, except to the extent necessary to accomplish that purpose.’
“[8 Thompson on Real Property § 65.06(b)] at 62-63 [(Thomas ed.1994)].
“... ‘[T]he substantive rules governing the profit a prendre relationship are generally the same as those governing easements.’ 8 Thompson on Real Property, § 65.06(a) at 61. See also Gerhard v. Stephens, 68 Cal.2d 864, 877, 442 P.2d 692, 704, 69 Cal.Rptr. 612, 624 (1968) (‘[a] profit a prendre [is] an incorporeal hereditament .... essentially indistinguishable from [an] easement’).”
David Lee Boykin Family Trust v. Boykin, 661 So.2d 245, 250 (Ala.Civ.App.1995). “ ‘An exclusive easement grants unfettered rights to the owner of the easement to use the easement for purposes specified in the grant “to the exclusion of all others,” ’ including the servient owner. [7] Thompson on Real Property ... § 60.04(b)(2) [(Thomas ed.1994)].” Jackson v. City of Auburn, [Ms. 2031010, April 7, 2006] — - So.2d -, - (Ala.Civ.App.2006)(opin-ion on application for rehearing).
When the words “grant, bargain, and sell” appear in a deed, as they do in the 1965 deed reconveying the property from the Horas to the Collinses, the conveyance is construed by statute as containing a covenant of quiet enjoyment “unless limited by the express words of [the] conveyance.” See § 35-4^-271, Ala.Code 1975, which provides, in pertinent part:
“In all conveyances of estates in fee, the words ‘grant,’ ‘bargain,’ ‘sell’ or either of them, must be construed, unless it otherwise clearly appears from the conveyance, an express covenant to the grantee, his heirs and assigns, that the grantor was seised of an indefeasible estate in fee simple, free from incum-brances done or suffered by the grantor, except the rents and services that are reserved; and also for quid enjoyment against the grantor, his heirs and assigns, unless limited by the express words of such conveyance. ”
(Emphasis added.) The covenant for quiet enjoyment in the 1965 deed reconveying the property was limited by the express words of the conveyance:
“Edward W. Hora and Barbara Barthes Hora, husband and wife, .do hereby grant, bargain, sell and convey, subject to reservations and restrictions mentioned herein ....
[[Image here]]
“The aforesaid conveyance is made subject to the following reservation which the grantors have reserved unto themselves:
“1 — The grantors do hereby reserve the exclusive hunting rights to said property.” •
(Emphasis added.)
III.
The fee owners insist that there was no credible evidence at trial indicating that anyone other than the fee owners had *108 exercised the exclusive hunting rights on the property for the 23-year period between 1975 and 1998. They do not argue that the exclusive hunting rights held by the Horas and their successors in title had been abandoned. Instead, they argue that they (the fee owners) had adversely possessed the exclusive hunting rights for the statutory or prescriptive period. Thus, they insist, the trial court’s ruling that their adverse-possession theory of recovery was not supported by the evidence was clearly erroneous.
“Alabama recognizes two types of adverse possession: (1) adverse possession by prescription and (2) statutory adverse possession pursuant to § 6-5-200, Ala.Code 1975. Sparks v. Byrd, 562 So.2d 211 (Ala.1990). Specifically,
“ ‘ “Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years. See Fitts v. Alexander, 211 Ala. 372, 170 So.2d 808 (1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. Code 1975, § 6-5-200. See Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962).” ’
“Sparks, 562 So.2d at 214 (quoting Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 618 (Ala.1980)).”
Bohanon v. Edwards, 875 So.2d 309, 311 (Ala.Civ.App.2003) (footnote omitted). “Both statutory adverse possession and adverse possession by prescription share the common element[ ] of ... exclusive ... possession under claim of right.” Jesse P. Evans III, Alabama Property Rights and Remedies § 10.3 at 10-16 (3d ed.2004)(footnote omitted).
The evidence at trial indicated that the fee owners as well as one of the Over-streets’ predecessors in title, Griffin, had hunted on the property from 1975 to 1998. Notwithstanding the argument by the fee owners that the Overstreets’ evidence was not credible, the trial court was the sole judge of the credibility of the witnesses. See Architectura, Inc. v. Miller, 769 So.2d 330, 332 (Ala.Civ.App.2000) (stating that “ ‘[i]n ore tenus proceedings the trial court is the sole judge of the facts and of the credibility of witnesses,’ and ‘we are required to review the evidence in a light most favorable to the prevailing parities]’ ” (quoting Driver v. Hice, 618 So.2d 129, 131 (Ala.Civ.App.1993))).
The trial court was presented with evidence that, if believed, would support a finding that from 1975 to 1998 the fee owners were not the only ones who hunted on the property and, thus, that their “possession” was not exclusive. “While hunting ... rights are property rights which may be acquired as are other property rights, [the fee owners’] evidence falls short of establishing entitlement by [adverse possession or] prescription .... [because] [t]heir use was not exclusive.” Harvat v. Clear Creek Drainage Dist., 197 Neb. 352, 353-54, 249 N.W.2d 209, 210 (1977).
The judgment of the Clarke Circuit Court is affirmed.
AFFIRMED.
THOMPSON, PITTMAN, MURDOCK, and BRYAN, JJ., concur.

. The trial court entered a summary judgment in favor of Chastain on May 24, 2001, leaving *104 the Overstreets as the only defendants in the action.

. Section 35-10-26 provides, in pertinent part:
"The payment or satisfaction of the real property mortgage debt divests the title passing by the mortgage. 'Payment or satisfaction of the real property mortgage debt' shall not occur until there is no outstanding indebtedness or other obligation secured by the mortgage, and no commitment or agreement by the mortgagee to make advances, incur obligations or otherwise give value (collectively referred to as 'extend value'), under any agreement, including, without limitation, agreements providing for future advances, open end, revolving or other lines of credit, or letters of credit.”